CITY OF NEW YORK, Plaintiff, *v.* WILLIAM R. WILLCOX et al., Defendants.

(Supreme Court, New York County, April, 1921.)

Constitutional law — equal protection of the laws not denied by Laws of 1921, chap. 154 — agreement between the states of New York and New Jersey pursuant to said statute is valid — injunction denied in action for abrogation of said agreement.

Subject to the approval of the Congress any two states may enter into a joint adventure to promote the common welfare of their citizens.   (P. 354.)

The statute (Laws of 1921, chap. 154) designed to remove artificial barriers to delay in the shipment of goods existing at the port of New York and to confer special benefit upon the people of the states of New York and New Jersey, as well as the country in general, is not unconstitutional as a denial to the city of New York or its people of the equal protection of the laws, and the contention that said statute creates a new political subdivision is without merit.   (Pp. 353–355.)

Where by an agreement entered into between the states of New York and New Jersey pursuant to said statute, they agreed to cooperate, each within its own sovereignty, and the agreement expressly limits the jurisdiction of the joint board of managers to such powers and authority as may be legally conferred upon them in conformity with the constitution of the state of New York and the constitution of the United States, it is obvious that the state of New York has parted with none of its sovereign rights nor relinquished the control over any property belonging to its people.   (Pp. 354, 355.)

A motion to continue an injunction in an action brought by the city of New York seeking to have said agreement abrogated, denied upon the merits.   (P. 357.)

APPLICATION for continuance of an injunction.

John P. O'Brien, for plaintiff.

Julius H. Cohen, Special Deputy Attorney-General, for defendants.

DELEHANTY, J.   This is an application for the continuance of an injunction pending the trial of an action instituted by the city of New York to prevent the consummation of an agreement between the states of New York and New Jersey for the development of the port of New York, pursuant to the provisions of chapter 154, Laws of 1921. The papers presented disclose that the facilities of the port are cumbersome and inadequate, and as a result thereof delays occur in the shipment of goods and unusual cost for terminal service is imposed.   This is true to such an extent that traffic heretofore passing through the port is diverted on an extensive scale to other American harbors having modern and appropriate equipment.   The principal difficulty at the port of New York, it appears, has been due to the fact that many of the continental trunk lines terminate in the state of New Jersey, while most of the oceangoing traffic is received and discharged upon the island of Manhattan and in the borough of Brooklyn in the state of New York, and that between the various shore lines of the port the state line of New York and New Jersey intervenes.   It is with a view of co-ordinating the terminal facilities throughout the port district, and of administering them as a unit that the legislatures of the states of New York and New Jersey have drawn up and are about to execute the preliminary agreement which is sought to be abrogated in this action.   The corporation counsel contends in the first place on behalf of the plaintiff that since the proposed compact provides for the joint management of piers located in the city of New York by representatives appointed by the states of New York and New Jersey, called the port authority, and for the transfer of freight and passengers in and about the city of New York under the joint control of such representatives, that the legislature of the state of New

York has surrendered its sovereignty or some part of it to the state of New Jersey, and has delegated exclusive legislative functions of the state of New York to the state of New Jersey, or to the congress of the United States. It is further urged in support of this application that the proposed legislation is unconstitutional and void for the following reasons: That it would vest in the joint commission appointed by the respective states having charge of the administration of the port affairs, control over certain streets in the city of New York. That it authorizes the construction or operation of a street railroad, surface or subsurface, without containing the condition in regard to the consents of property owners and local authorities. That it violates the Fourteenth Amendment to the Federal Constitution in that it denies to the plaintiff and its people the equal protection of the laws. That it is an attempt to regulate the foreign and interstate commerce passing through the port of New York in violation of the Commerce Clause of the Federal Constitution. That it is an attempt to enter into a commercial treaty or alliance or confederation with the state of New Jersey, and that it seeks to create an unauthorized *quasi* political subdivision of the United States in violation of the Federal Constitution. It is also contended that the ferry franchises around Manhattan island are exclusive franchises in the city of New York, and may not be interfered with as provided in the proposed act in question. An examination of the authorities submitted on the hearing of this motion demonstrates that the claims of the city of New York are without legal justification, and that there is nothing in the proposed contract inimical to the rights of the people of the city or state of New York. On the contrary, the legislation in question is apparently designed to remove artificial barriers existing at the

port, and to confer special benefit upon the people of the states of New York and New Jersey, as well as the country in general. It is well established that subject to the approval of congress any two states may enter into a joint adventure to promote the common welfare of their citizens. Such an agreement was entered into between New York and New Jersey in regard to Palisades Park, which lies upon the borders of the two states. The same states have another agreement as to the construction of a vehicular tunnel connecting the two states. In such cases it is not necessary or permissible to limit or surrender the sovereign rights of the people, but where such rights are properly preserved no question can be raised as to the validity of the compact. In the case at bar the act in question has been effectively drawn so as to preclude any point as to its unconstitutionality. It is expressly provided in article XVIII of the compact that the port authority or joint commission is authorized "to make suitable rules and regulations not inconsistent with the Constitution of the United States or of either state, and subject to the exercise of the power of congress, for the improvement of the conduct of navigation and commerce, which, when concurred in or authorized by the legislatures of both states, shall be binding and effective upon all persons and corporations affected thereby." Since the legislature of each state now has the right to make rules and regulations for the improvement of the conduct of navigation and commerce not inconsistent with the Constitution of the United States or of either state, and subject to the exercise of the power of congress, this is but a direction to the port authority to prepare rules and regulations which the state may adopt. The two states under the proposed legislation agree to co-operate, each within its own sovereignty remaining supreme.

It is obvious, therefore, that the state of New York has parted with none of its sovereign rights, nor relinquished the control over any property belonging to the people of New York. Moreover, the argument that the streets and ferries of the city are to be unlawfully appropriated or interfered with is conclusively answered in the proposed agreement itself. That agreement expressly states: '' No property now or hereafter vested in or held by either state or by any county, city, borough, village, township or other municipality shall be taken by the port authority without the authority or consent of such state, county, city, borough, village, township or other municipality, nor shall anything herein impair or invalidate in any way any bonded indebtedness of such state, county, city, borough, village, township or other municipality, nor impair the provision of law regulating the payment into sinking funds of revenues derived from municipal property, or dedicating the revenues derived from any municipal property to a specified purpose.'' The contention that the legislative act herein creates a new political subdivision is also without merit. It is obvious that the outlining of a district for the purpose of applying therein certain rules and regulations under which the citizens of the whole state and of an adjoining state will reap an unqualified and direct benefit is not the creation of a political subdivision. No power to tax is granted, no governmental authority is bestowed, and, as pointed out above, the powers of existing municipalities over their properties and their sinking funds and their power to develop port and harbor facilities are expressly preserved. The sole power granted to the joint board of managers, which power is not to be exercised until the states have agreed upon a comprehensive plan, is to do only what any private corporation may do, namely, to own and

operate terminal and transportation facilities, and to operate them not for private gain, but for the welfare and progress of the community. It is not necessary to point out in detail the respects in which the claims of the plaintiff fall short in regard to the remaining alleged grounds of unconstitutionality of the act herein. Suffice it to say that the compact expressly limits the jurisdiction of the joint board of managers to such powers and authority as may be legally conferred upon them in conformity with the Constitution of the state of New York and the Constitution of the United States. It is only within such limitations that the act in question at all presumes to be valid. The unwarranted position of the plaintiff herein is made more apparent by a review of the results that would obtain if the compact be treated as executed. In that event there would exist between the states of New York and New Jersey, *first,* a pledge on the part of each to co-operate in the development of the Port of New York; *secondly,* the boundary lines of the zone or district constituting the port will be fixed; *thirdly,* an agency or joint commission will be created, to which the legislature will delegate the execution of such plans as may be hereafter adopted by the two states, but which for some time can do nothing but study, hold public hearings and report; *fourthly,* an agreement will exist between the two states that they will endeavor to formulate physical plans, and that the commission may recommend rules and regulations for the better promotion of the commerce of the port "not inconsistent with the Constitution of the United States or of either state, and subject to the exercise of the power of congress; and, finally, that the commissioners who are to sign the compact on behalf of the two states are authorized to apply for the approval of the compact by congress. I am therefore con-

strained to hold upon the merits of this litigation that the plaintiff has failed to establish a clear right to injunctive relief. Motion accordingly denied.

Motion denied.