In the Matter of the Application of the BOARD OF SUPERVISORS OF ONTARIO COUNTY, Petitioner, against THE WATER POWER AND CONTROL COMMISSION, DEPARTMENT OF CONSERVATION, OF THE STATE OF NEW YORK, Consisting of ALEXANDER MACDONALD, Conservation Commissioner; FREDERICK STUART GREENE, Superintendent of Public Works, and ALBERT J. DANAHER, Assistant Attorney-General, Respondent.

THE CITY OF ROCHESTER, Respondent.

Third Department, November 20, 1929.

*Earle S. Warner*, for the petitioner.

*Hamilton Ward, Attorney-General [Albert J. Danaher, Assistant Attorney-General,* of counsel], for the respondent, The Water Power and Control Commission, Department of Conservation, of the State of New York.

*Clarence M. Platt, Corporation Counsel [George B. Draper* of counsel], for the city of Rochester.

HILL, J.   The city of Rochester has petitioned the Water Power and Control Commission of the State to approve its project for an additional water supply and the acquiring of land therefor. The city plans to take Honeoye lake and creek, together with uplands in Ontario county which will receive the drainage from one hundred and eighty-seven square miles.   A dam eight hundred feet long and sixty feet high is to be built across Honeoye creek valley forming a reservoir having a water surface of twelve and a half square miles.   This will entirely submerge Honeoye lake. Also, it is planned to utilize Mud or Ganargua creek, a tributary of the Oswego river, its watershed being east of that of Honeoye lake.   A diverting dam and tunnel will be built by which the water will be conveyed to the proposed Honeoye reservoir.   The Mud creek drainage area is about thirty-two square miles.   The

combined project will furnish substantially 70,000,000 gallons of water per day. The source of the present city owned water supply of Rochester is Hemlock and Canadice lakes, located partly in Livingston and partly in Ontario counties. The water from Hemlock lake is conducted twenty-seven miles through a pipe line to Cobb's Hill reservoir in the city of Rochester. The water from the Honeoye reservoir will be conveyed eighteen miles by pipe line to the same reservoir.

The tract of land to be taken is more than fifteen miles long and three miles wide, being nearly half of three townships, and 2,700 acres from another. The villages of Honeoye and Richmond Mills will be submerged. The habitations of nearly 1,700 people will be affected. This does not include summer homes and camps. Nine miles of highway will be submerged, and an equal amount made nearly useless. Some of the towns will be cut in half by the reservoir. Private and municipal business, as well as the school, church and social life of those dwelling in the vicinity of the project will be interfered with. It is estimated that there will be an expenditure of nearly $23,000,000.

In 1925 the population of Rochester was 316,000 and the assessed valuation of taxable property $522,453,327. In 1926 more than 28,000,000 gallons of water were used daily. For thirty years there has been an average flow of 32,000,000 gallons daily from the present source, but the safe yield in drouth periods does not exceed 26,000,000 gallons. The level of Hemlock lake has been raised recently, making available a safe yield of 30,000,000 gallons. The present source will furnish a reasonable margin of safety until 1930 only, if the normal increase of population continues. The health and safety, not only of the residents of that city, but of travelers temporarily there, require an additional source of water.

The Water Power and Control Commission, after many hearings, taking of much evidence and the receipt of many exhibits, from which the foregoing facts and many others appear, gave a conditional approval of the project. The Commission suggested or required that the city seek to have enacted an amendment to the Conservation Law which would permit and require payment of indirect damages. The Commission, after reciting the disarrangement of business and social life, said that " such interference with and changes in the properties and method of living of these people will result in damages to them of many kinds, which will not be limited to the ordinary direct damages for which the general laws of the State now provide a method of determination and require compensation," and recommended a statute similar to that which now applies to the city of New York in its water supply projects.

The Commission adjourned for a sufficient period to permit the legislation to be enacted. The amendment is now chapter 862 of the Laws of 1928 (adding to Conservation Law, §§ 526–529). Further hearings on damages only were held and the Commission gave its final approval. The entire proceeding is now before this court on a certiorari order.

The Water Power and Control Commission of the Conservation Department is authorized by law to approve or reject applications for additional water supply. It is to determine " whether the plans proposed are justified by public necessity, whether they provide for the proper and safe construction of all work connected therewith, whether they provide for the proper protection of the supply and the watershed from contamination or provide for the proper filtration of such additional supply, and whether such plans are just and equitable to the other municipalities and civil divisions of the State affected thereby and to the inhabitants thereof, particular consideration being given to their present and future necessities for sources of water supply, and whether such plans make fair and equitable provisions for the determination and payment of any and all legal damages to persons and property, both direct and indirect, which will result from the execution of said plans or the acquiring of said lands." (Conservation Law, § 523.)*

The jurisdiction of this court in these proceedings is fixed by section 1304 of the Civil Practice Act. We are to determine whether the decision of the Commission was an unlawful, arbitrary or capricious exercise of power. (*People ex rel. N. Y. & Queens Gas Co. v. McCall,* 219 N. Y. 84.)

It is contended that chapter 862 of the Laws of 1928 violates section 16 of article 3 of the State Constitution, which provides that no local bill shall embrace more than one subject and that shall be expressed in the title. The title of this act is "An Act to amend the Conservation Law, in relation to the powers of the Water Power and Control Commission as to the water supply of the City of Rochester." The legislation deals with that subject only. This title calls attention to the purpose of the act, and one reading it would know the subject legislated upon. The title is proper and sufficiently broad. (*Matter of Long Sault Development Co.,* 212 N. Y. 1; *First Construction Co. v. State of New York,* 221 id. 295.) The act is further challenged as violating the " Home Rule " provision of the Constitution (Art. 12, § 2). The statute affects the health and safety not only of the residents of Rochester, but of persons temporarily there. It does not deal solely with the " prop-

* Renum. by Laws of 1928, chap. 242, from § 522, as amd. by Laws of 1922, chap. 413.— [REP.

erty, affairs or government " of Rochester. (*Adler* v. *Deegan,* 251 N. Y. 467.) The act does not violate the " due process " provision of either the Federal or State Constitutions. (U. S. Const. 14th Amendt. § 1; State Const. art. 1, § 6.) It requires the city to do more than is demanded by the Constitution as a condition for granting the right of eminent domain. This has been approved. (*People ex rel. Burhans* v. *City of New York,* 198 N. Y. 439.)

Other technical objections are raised, but they do not require discussion. The only issue of fact which requires consideration is whether the plans " are just and equitable to the other municipalities and civil divisions of the State affected thereby." The petitioner contends that an adequate supply of potable water could be obtained from Lake Ontario at less expense than that involved in the plan, and without damage to the residents of Ontario county. The brief presented by the Commission states that it had no authority to determine whether Lake Ontario was a better source of supply than the one under consideration. We do not agree with that construction of its powers. Section 523 of the Conservation Law provides that the Commission " may reject the application entirely or permit another to be filed in lieu thereof, but it shall, however, make a reasonable effort to meet the needs of the applicant." The brief says that the Commission was not empowered to substitute its opinion for that of the city as to the most desirable source, and that only the city can select a source to be considered. The Commission has power to determine the most desirable source, and if it be one other than that asked by the city, it may " permit " a new application to be filed. If the decision of the Commission indicated that it had followed the brief, we should feel it was our duty to annul the order and grant a rehearing, but in the record of its proceedings on the final approval, at the end of a two and a half page discussion of the relative merits of the Honeoye lake project and Lake Ontario, it said: " Mere proof of the availability of another source of supply, or even proof that such other source would be cheaper, or, in the opinion of the objectors or of the Commission, better for the people of the city, would not alone justify us in rejecting an application. Such rejection must be based on positive proof of undesirability or of inequitable conditions arising from the execution the particular project for which application is made.

" In this case, we believe that the proposed project is safer, more reliable and will give a better supply of water to the people of Rochester than will Lake Ontario."

The conclusion reached in the last paragraph quoted justifies the approval of the Commission's determination of this question of

fact. If it had determined that another source would be cheaper and in the opinion of the Commission better for the people of the city, it would not have been " just and equitable to the other municipalities and civil divisions of the State " to have caused the inconvenience, loss and hardship which the approval of this Honeoye project suggests. We disapprove of the Commission's construction of its powers as between a source nominated by the city and another more available, but it having determined as a matter of fact that the Honeoye source will furnish a safer, more reliable and better supply of water, we approve of its determination.

The determination should be confirmed, with costs and disbursements.

VAN KIRK, P. J., DAVIS, WHITMYER and HASBROUCK, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements.