Yak Yoobhis, J.
This is a taxpayer’s action under section 51 of the General Municipal Law to declare chapters 806 to 809, inclusive, of the Laws of 1955 unconstitutional, and to restrain the Mayor and Board of Estimate of the City of New York from acting thereunder in the condemnation of real property or the taking of other steps for the construction and operation of bridges over Throgs Neck connecting Bronx and Queens, or over the Narrows, connecting Kings and Richmond Counties (Brooklyn and Staten Island). Plaintiffs also seek to restrain the construction of a second deck to the George Washington bridge between New York and New Jersey.
The statutes involved in this controversy are interrelated. Their validity is attacked under the Home Rule provisions of the State Constitution (art. IX, §§ 11, 12). Other provisions of the State and Federal Constitutions are mentioned in the complaint, but they are not relied upon. Home Rule is the only basis on which the legislation is attacked in the brief or argument by appellants in this court.
It seems that no city message was submitted to the Legislature pursuant to section 11 of article IX of the Constitution in the. case of chapters 807 and 808 of the Laws of 1955. Those chapters pertain especially to the power of the Port of New York Authority to construct a second deck of the George Washington bridge, and to build a bridge across the Narrows. No city messages or special messages from the Governor appear to have preceded the enactment or subsequent amendments of the Port Authority Act, either before or after the taking effect of the present Home Rule amendment in 1938. Nineteen of such statutes are enumerated in the Port Authority’s brief, eight of which were enacted subsequent to the adoption of the *581 1938 Home Buie amendment. Although city messages would not have been required in the case of the earlier enactments, the earlier statutes would have run afoul of the Constitution of 1894 or its 1923 amendment in other respects if they pertained to the 11 property, affairs or government of any city ’ ’, viz., either in that such statutes would have had to have related to all cities in the State (of the same class before 1923), or would have had to have been adopted on a special message by the Governor to the Legislature and been passed by two thirds of the members of each house (cf. Adler v. Deegan, 251 N. Y. 467, 472, 473, 474; Admiral Realty Co. v. City of New York, 206 N. Y. 110; People ex rel. Central Trust Co. v. Prendergast, 202 N. Y. 188; McGrath v. Grout, 171 N. Y. 7; People ex rel. Einsfeld v. Murray, 149 N. Y. 367; N. Y. Const., 1894, art. XII, § 2, and as amd. in 1923). Chief Judge Cabdozo said in his concurring opinion in Adler v. Deegan (supra, p. 487) concerning these 1894 and 1923 constitutional mandates in their effect on possibly noncomplying statutes: “If all these acts are in truth invalid, we must submit to the inconvenience that would result from such a holding. It is not one to be invited.”
It is apparent that in drafting this legislation the Port Authority was always regarded as involved in matters of State concern, and consequently not subject to the Home Buie amendment. If it were to be brought within that amendment, the Port Authority Acts would have been invalid from the beginning inasmuch as they never complied with the constitutional requirements prescribed in the case of the enactment of statutes dealing with the “property, affairs or government” of cities. Appellants’ brief implies that chapters 807 and 808 of the Laws of 1955 relating chiefly to the Port Authority are less vulnerable to the charge that they did not comply with the Home Buie amendment, by stating that plaintiffs’ attack is “in the main ” addressed ‘ ‘ to the validity of the Home Buie legislation affecting Chapters 806 and 809.”
Although city messages are recited as having been submitted to the Legislature in chapters 806 and 809 (against which plaintiffs’ attack is in the main addressed), it is not necessary to decide whether such messages were, in fact, made in compliance with the Home Buie amendments to the State Constitution, or whether the recitals of these city messages in *582 the' statutes preclude further inquiry concerning them. The decisive question is whether the Home Rule amendment applies at all to any of chapters 806-809 of the Laws of 1955. The cases of Admiral Realty Co. v. City of New York (206 N. Y. 110, supra); Matter of McAneny v. Board of Estimate (232 N. Y. 377); City of New York v. Village of Lawrence (250 N. Y. 429); Adler v. Deegan (251 N. Y. 467, supra); Robertson v. Zimmermann (268 N. Y. 52); New York Steam Corp. v. City of New York (268 N. Y. 137); Gaynor v. Marohn (268 N. Y. 417); People ex rel. Bridge Auth. v. Davis (277 N. Y. 292) Salzman v. Impellitteri (203 Misc. 486, affd. 281 App. Div. 1028, affd. 305 N. Y. 414); Matter of Board of Supervisors of Ontario County v. Water Power & Control Comm. (227. App. Div. 345) City of New York v. Willcox (115 Misc. 351); Bush Term. Co. v. City of New York (152 Misc. 144, affd. 256 App. Div. 978, affd, 282 N. Y. 306) as well as the cognate case of Port of New York Auth. v. Weehawken Township (14 N. J. 570, 573) and the Federal District Cour-t ease of Howell v. Port of New York Auth. (34 F. Supp. 797, 798) bear upon various aspects of this topic, and establish the Port Authority to be engaged in matters of State concern. So, also, does Commissioner of Internal Revenue v. Estate of Shamberg (144 F 2d 998, cert. denied 323 U. S. 792), which held that the bonds of the Port Authority are obligations issued - on behalf of the state ” on which basis they qualified for exemption from the Federal income tax-. In the opinion by Judge Augustus Hand, it is stated that the Port Authority (p. 1000-) is fully owned by the two states and its projects are all operated in the interest of the public without profit to private persons. The compact was induced by the necessity for joint state action in the development of the Port of New York which lies partly within the jurisdiction of each state.”
In the Howell ease it was said (p. 798) (< In the words of Mr. Justice Frankfurter and Dean Landis, it is an organic whole, split between the law-making of two states ’ ’ and again (p. 801): The Port Authority * * *> is - a joint or common agency of the states of New York and New Jersey. It performs governmental functions which project beyond state lines ”.
*583 Quotations of this nature could be multiplied indefinitely, the upshot being without substantial contradiction that the matters over which the Port Authority has jurisdiction are of State concern, and, therefore, not within the Home Buie amendment. Judge Crane’s opinion in Adler v. Deegan (supra) interprets graphically the limited meaning which has attached to the words “ property, affairs or government of cities ”, and mentions as matters of State concern the operation of the railroads, surface, subways or elevated in the city of New York, essential as they are to that city (p. 472). Chief Judge Cardozo in a concurring opinion, which, like Judge Crane’s opinion, spoke for the court, summarizes the standard of judgment governing whether the Home Buie amendment applies, saying (p. 491): “ The test is rather this, that if the subject be in a substantial degree a matter of State concern, the Legislature may act, though intermingled with it are concerns of the locality. Measured by that test, this statute must prevail. I do not say that an affair must be one of city concern exclusively to bring it within the scope of the powers conferred upon the municipality by section 3 of the Home Buie article and section 11 of the City Home Buie Law in eases where the State has not undertaken to occupy the field. I assume that if the affair is partly State and partly local, the city is free to act until the State has intervened. As to concerns of this class there is thus concurrent jurisdiction for each in default of action by the other. The power of the city is subordinate at such times to the power of the State, but may be exerted without restraint to the extent that the two can work in harmony together. ’ ’
In Matter of Board of Supervisors of Ontario County v. Water Power & Control Comm, (227 App. Div. 345, 348-349, supra), the Third Department followed this reasoning in the base of a Water supply system for the City of Bochester, saying: “ The statute affects the health and safety not only of the residents Of Bochester, but of persons temporarily there. It does not deal solely with the ‘ property, affairs or government ’ Of Bochester. (Adler v. Deegan, 251 N. Y. 467.) ” (Italics supplied.)
It is interesting to note that Lehm-an and O’Brien, JJ,, who vigorously dissented in Adler v. Deegan (supra), concurred in *584 Judge Httbbs’ opinion for the majority in Robertson v. Zimmermann (supra) on the authority of Adler v. Deegan.
There is no question, we think, that the legislation dealing with the Port Authority did not require a city message. The Port'Authority is and of necessity has to be a State agency, in view of its dual State character and functions. Justice Martuscello pointed this out in his opinion at Special Term. Consequently there can be no effective attack upon this statutory authorization of the Port Authority to build a double deck on the George Washington bridge. The Narrows bridge terminates, to be sure, on Staten Island within the State of New York, but both chapters 807 and 808 require concurrent legislation by the State of New Jersey, and it is clear that the actuating plan calls for highway connections with bridges from Staten Island to New Jersey. That is the primary reason on account of which the construction of the Narrows bridge is provided to be undertaken by the Port Authority; thereafter it is to be transferred to the Triborough Bridge & Tunnel Authority. It could not be undertaken by the Port Authority unless New Jersey were also involved. Supplementary statutes have been adopted in New Jersey (Narrows Bridge Authorization, Laws of New Jersey, 1956, ch. 12; George Washington Bridge Second Deck Act, Laws of New Jersey, 1956, ch. 156). The Narrows bridge, like the second deck on the George Washington bridge, is of an interstate character and therefore properly brought within the jurisdiction of the Port Authority. Ipso facto it is a matter of State concern.
The only project covered by these statutes which has given us pause on this score is the Throgs Neck bridge. That is authorized to be constructed by Triborough (not by the Port Authority) and will be under the sole jurisdiction of Triborough. It links Bronx and Queens, as does the Whitestone bridge. It is of passing interest (although the point has not been argued) that the Triborough Bridge Authority was created (L. 1933, eh. 145) and its authority extended to the construction of the White-stone bridge (L. 1937, ch. 3) by legislation passed in each instance by two-thirds vote on emergency messages of the Governor. Whether or not that procedure was necessary, we havd concluded that the proposed Throgs Neck bridge, whatever may be the status of the Whitestone bridge, is an integral
*585 part of the projects of an interstate character that are authorized and provided for by these four statutes simultaneously adopted and now before us on appeal. Chapter 809, as has been noted, designates as among the “ existing or proposed main routes or thoroughfares ’ ’ the ‘ ‘ Cross-Bronx expressway from George Washington bridge approach to Throgs Neck bridge ”, which indicates that the State of New York has adopted that portion of the national system of interstate highways which designates the Throgs Neck bridge as a continuation of the main route across the Hudson Biver over the George Washington bridge. This national system of interstate highways also contemplates traffic to and from New Jersey over the Throgs Neck bridge by way of the proposed Narrows bridge or one of the tunnels under the Hudson Biver. The Throgs Neck bridge is thus linked with the George Washington bridge, and with other existing or contemplated routes to New Jersey. All of these projects are joined together in chapters 806-809 of the Laws of 1955, they are all part of an interstate project or projects and consequently are matters of State concern. In this view of the case, there can be no conflict between the Home Buie amendments and chapters 806-809 of the Laws of 1955. More than this we need not determine at this time concerning the scope of the Home Buie amendment.
The judgment appealed from is affirmed, without costs.
Chief Judge Conway and Judges Desmond, Dye, Ftjld and Froessel concur; Judge Btjrke taking no part.
Judgment affirmed.