263 N.J. Super. 6 (1993)
621 A.2d 941
EDWARD WRIGHT, PETITIONER-RESPONDENT,
v.
PORT AUTHORITY OF NEW YORK AND NEW JERSEY, RESPONDENT-RESPONDENT, AND THE SECOND INJURY FUND, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1992.
Decided January 26, 1993.
*7 Before Judges KING, BRODY and THOMAS.
Bertram P. Goltz, Jr., Deputy Attorney General, argued the cause for appellant The Second Injury Fund (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Goltz, on the brief).
*8 George L. Kimmel argued the cause for respondent Edward Wright (Wilentz, Goldman & Spitzer, attorneys; Mr. Kimmel and Glen D. Savits, on the brief).
George P. Cook argued the cause for respondent Port Authority of New York and New Jersey (Hugh H. Welsh, New Jersey Solicitor, attorney; Mr. Cook, on the brief).
Alfred G. Osterweil, filed an amicus curiae brief on behalf of the Port Authority Police Benevolent Association, Inc. (Craig Kozan, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This case presents the question of the right of a totally disabled employee of the Port Authority of New York and New Jersey (Port Authority) to recover both his accidental disability pension benefits and his New Jersey workers' compensation weekly benefits in full despite the bar against dual recovery in N.J.S.A. 34:15-43. The judge of workers' compensation ruled in favor of the disabled employee and awarded a dual recovery. We disagree and reverse. We conclude that N.J.S.A. 34:15-43 precludes the recovery of both a full accidental disability pension and total permanent disability benefits under the New Jersey workers' compensation act.

I
On October 24, 1984 petitioner Edward Wright filed a claim petition for workers' compensation benefits with the Division of Workers' Compensation. Wright's employer, the Port Authority, admitted that he was an employee on the date of the accident and that the injury arose out of and in the course of his employment.
In July 1986 Wright filed a verified petition for benefits from the Second Injury Fund (Fund), N.J.S.A. 34:15-95. The Fund, through the Attorney General, appeared and moved to dismiss *9 the claim petition, relying on N.J.S.A. 34:15-29, -43, contending that petitioner Wright was barred from receiving any workers' compensation or Fund benefits because he was already receiving an accidental disability pension for the same injury. On March 12, 1991 the judge denied the Fund's motion.
A hearing was held on May 16, 1991 where petitioner testified and produced medical reports and other documentation in support of his claim. On June 21, 1991 the judge entered a final decision ordering the Port Authority and the Fund to pay workers' compensation total permanent disability benefits to petitioner without any credit or offset for his accidental disability pension. The Fund appeals.

II
Petitioner Wright, born in 1944, was employed from 1971 to 1984 by the Port Authority as a police officer. On April 19, 1984 he responded to a burglar alarm in a warehouse at Port Newark while on duty. During a search of the warehouse he "tripped and fell over wooden pallets," injuring his "neck, back, shoulders, low back and mid back" and was hospitalized twice for his injuries. He described his injuries in his claim petition as: "orthopedic, neurological and neuropsychiatric disability: Injury to entire spine with radiating pains to shoulders and arms and legs; headaches." The parties stipulated that he is now permanently and totally disabled. He has not worked since the accident.
Petitioner had several pre-existing injuries which contributed to his condition of permanent total disability. He had surgery on his right elbow in 1975; surgery on his right knee in 1977 which resulted in a workers' compensation award for 17 1/2% of partial total disability of the right leg; an automobile accident in 1979, and a 1982 automobile accident which resulted in a workers' compensation award for 12 1/2% of partial total disability. These accidents were all work-related.
*10 At the time of his accident in 1984 Wright's salary was $578.98 a week. The Port Authority recognized the compensability of the April 1984 injury, provided medical treatment, and paid full wages from April 1984 to October 1985. After his retirement in October 1985, Wright was paid temporary disability benefits of $255 per week, the maximum rate of compensation allowed by law, until April 24, 1987. Wright also was awarded federal Social Security disability benefits of $739.80 per month for himself and $370 per month for his family, effective October 1984. This resulted in a $258.10 per week total benefit from Social Security.
Wright also applied for and received an initial accidental disability pension under the New York State Police Pension Fund, which funds the Port Authority pension for police officers and is established by employer and employee contributions. This pension was in the amount of $2,123 per month or $490.40 per week. This pension was effective in October 1985. The pension increased to $2,246 per month in January 1990. The parties stipulated that
New York State only takes a reduction in accidental disability pension payments for workers' compensation disability payments made pursuant to the New York State Workers' Compensation Board and does not take credit for disability payments made under the New Jersey Workers' Compensation Law. [See N.Y. Retire. & Soc. Sec. Law § 364(a)(1) (McKinney 1987).]
The Fund moved to dismiss the workers' compensation claim on the basis of N.J.S.A. 34:15-43, which says in pertinent part:
Every officer, appointed or elected, and every employee of the State, county, municipality or any board or commission, or any other governing body, including boards of education, and governing bodies of service districts, individuals who are under the general supervision of the Palisades Interstate Park Commission and who work in that part of the Palisades Interstate Park which is located in this State, and also each and every member of a volunteer fire company doing public fire duty and also each and every active volunteer, first aid or rescue squad worker, including each and every authorized worker who is not a member of the volunteer fire company within which the first aid or rescue squad may have been created, doing public first aid or rescue duty under the control or supervision of any commission, council, or any other governing body of any municipality, and board of fire commissioners of such municipality or of any fire district within the State, or of the board of managers of any State institution, every county fire marshal and assistant county fire *11 marshal and every special, reserve or auxiliary policeman doing volunteer public police duty under the control or supervision of any commission, council or any other governing body of any municipality, who may be injured in line of duty shall be compensated under and by virtue of the provisions of this article and article 2 of this chapter (R.S. 35:15-7 et seq.). No former employee who has been retired on pension by reason of injury or disability shall be entitled under this section to compensation for such injury or disability; provided, however, that such employee despite retirement, shall, nevertheless, be entitled to the medical, surgical and other treatment and hospital services as set forth in R.S. 34:15-15. [N.J.S.A. 34:15-43; emphasis added].
The judge characterized the issue as whether Wright was precluded from recovering New Jersey Workers' Compensation benefits under N.J.S.A. 34:15-43 because he received pension benefits from the State of New York for the same injury. As noted, the New York state pension law specifically reduces disability pension installments by the amount of any concurrent New York workers' compensation award.[1] This reduction, however, *12 is applied administratively to payments made pursuant to the New York State Workers' Compensation Board only, and is not specifically applied to workers' compensation disability payments made under the laws of New Jersey or any other state. The New York statute simply does not mention or consider awards under the laws of other states. The judge remarked that "the reason for this strained and costly interpretation of the New York State Police and Fire Pension Act is not readily apparent," however "since we have no expertise in New York law and all the parties concede that this is the way the statute has been administered in New York and will be applied to this case, it must be accepted."
Turning to the facts and the applicability of N.J.S.A. 34:15-43, the judge concluded that if petitioner has been an employee of the State of New Jersey, a municipality or a board or other political subdivision thereof, including the Palisades Interstate Park Commission, and was receiving a disability pension, he would be precluded from recovering workers' compensation benefits. As emphasized above, N.J.S.A. 34:15-43 contains an explicit reference to the Palisades Interstate Park Commission, a bi-state body as is the Port Authority. There is no specific reference to the Port Authority, or any other bi-state body, in N.J.S.A. 34:15-43. The judge found this omission conclusive upon his decision to award dual benefits to petitioner, stating that "in the absence of statutory authority, workers' compensation benefits may not be withheld if a petitioner is receiving a disability pension."
The judge continued:
A clear reading of Section 43 does not permit the taking of Workers' Compensation rights from the petitioner where he is receiving disability benefits *13 under a New York State Pension as an employee of the Port Authority of New York and New Jersey. To do so, the language must be clear and not ambiguous and it is not so here.
Indeed, by amending the statute, that is Section 43, so as to include employees of the Palisades Interstate Parks Commission, while failing to include employees of the Port Authority of New York and New Jersey or any other bi-state agency, the legislature evidenced an intent not to remove Workers' Compensation Benefits from Port Authority employees who are receiving disability pension. This is in keeping with the long standing rule of statutory interpretation, expressio unius est exclusio alterius.

The judge agreed that the intent of the statute was "to prevent double recovery" from the State. But he maintained that this intent did not carry through to the circumstances of the present case.
The Port Authority of New York and New Jersey is not a state agency. It is not funded by the state or its taxpayers. It is a bi-state agency, self sufficient, funded by user fees contributed by all who use its facilities. That is residents of all 50 states and such foreigners who may use it. It is not a cost to the taxpayers of the state.
Clearly, if the legislature wishes to cut off Workers' Compensation Benefits for those people who are permanently and totally disabled and are receiving New York State Disability Pensions pursuant to their work with the bi-state agency Port Authority of New York and New Jersey, it may do so. The legislative remedy is clear to amend the statute as it did in the case of the Palisades Interstate Park Commission.
In the absence of same, I find no basis to dismiss the Claim Petition....
At the March 1991 hearing the Deputy Attorney General representing the Fund made clear his intention to appeal the judge's adverse legal determination. The parties then agreed that two-thirds of the liability for Wright's permanent and total disability would be apportioned to the Port Authority and one-third, representing the preexisting disability, to the Fund.
In his final decision of June 21, 1991, the judge found that Wright was totally and permanently disabled. He attributed the disability both to Wright's last compensable accident and to the combined effects of his previous disability. The Port Authority was ordered to make payments of $255 per week to Wright for 300 weeks, beginning on April 25, 1987 through January 22, 1993, or for two-thirds of the period of his permanent disability award. The Fund was ordered to begin making *14 payments to Wright at the expiration of the 300-week period, or on January 23, 1993. The Fund was directed to make payments of $255 per week to Wright for 150 weeks (January 23, 1993 to December 8, 1995). After that, Wright was to receive, under N.J.S.A. 34:15-12(b), $255 per week from the Fund for the remainder of his life if his disability continued.
The Fund contends that the judge's final decision was contrary to the spirit and intent of N.J.S.A. 34:15-43 and the strong public policy in this State against dual recovery for disability from any public funds. The Fund points out that if the compensation judge's award is affirmed Wright will receive cumulative disability benefits in almost double the amount of his previous weekly salary. Appellant presents these weekly figures in support of its contention: Wright's salary at the time of the accident was $578.98. He presently receives $518.81 per week in accidental disability benefits, and $258.10 per week in Social Security disability benefits, a total of $776.91. If the workers' compensation award is affirmed, Wright would receive an additional $255 per week, for a total weekly benefit of $1,031.91. The Fund contends that this is precisely the type of "windfall" from public funds which N.J.S.A. 34:15-43 was designed to prevent.[2]
The workers' compensation system is remedial social legislation aimed at providing income protection and medical services to workers injured in the workplace. Jon L. Gelman, 38 N.J. Practice, Workers' Compensation Law § 1, at 2-3 (1988). It *15 provides benefits, although somewhat less than the full loss, for work-related injuries regardless of fault. Id.
The Second Injury Fund, previously known as the One Percent Fund and then the Two Percent Fund, is a "legislatively-created fund requiring contributions from workers' compensation insurance carriers and self-insured employers to absorb part of the impact upon employers of awards in certain cases involving permanent and total disability." Lewicki v. N.J. Art Foundry, 88 N.J. 75, 82-83, 438 A.2d 544 (1981); N.J.S.A. 34:15-94, -95. Its purpose is to pay that portion of a total and permanent disability award which was not caused by the last employer, thus to encourage employers to hire partially disabled persons. Taylor by Taylor v. Engelhard Indus., 230 N.J. Super. 245, 252, 553 A.2d 361 (App.Div. 1989). "The Legislature has manifested concern that the Fund not be subject to undue invasion." Paul v. Baltimore Upholstering Co., 66 N.J. 111, 129, 328 A.2d 610 (1974). The Fund's resources are limited; it should not be saddled with additional financial obligations unless the Legislature mandates. Wehrle v. American Can Co., 224 N.J. Super. 400, 404, 540 A.2d 898 (App.Div.), remanded, 111 N.J. 642, 546 A.2d 553, aff'd on reh'g, 228 N.J. Super. 382, 549 A.2d 1252 (App.Div. 1988), certif. denied, 114 N.J. 480, 555 A.2d 605 (1989).
As the Fund points out, N.J.S.A. 34:15-43 has two purposes. First, a broad range of public employees are provided workers' compensation benefits under this section. Second, the section prohibits workers' compensation benefits under this section for any "former employee who has been retired on pension by reasons of injury or disability," in other words, "double-dipping." N.J.S.A. 34:15-43.
We have no doubt that the Port Authority is a "governing body" within the meaning of N.J.S.A. 34:15-43, subjecting petitioner Wright to the potential statutory disqualification for former employees "retired on accidental disability." We do not think that the Legislature, by expressly mentioning the Palisades *16 Interstate Park Commission, another bi-state agency, in the statute intended to exclude the Port Authority and all other bi-state authorities in which New Jersey participates, about a dozen, (N.J.S.A. Title 32), from the scope of this prohibitory provision.
The Fund first asserts that the Port Authority, by its nature, is surely a "governing body" within the scope of N.J.S.A. 34:15-43, thus precluding Wright as a "former employee" from receiving compensation benefits if he retires on disability. Alternatively, they argue that if N.J.S.A. 34:15-43 does not apply to the Port Authority, Wright should not be entitled to workers' compensation benefits in any event. Wright himself describes the Port Authority as a "governing body", at least for purposes of recovery of workers' compensation benefits.
To understand the dispute here, we consider the nature of the Port Authority and its powers. The Port Authority of New York and New Jersey was created on April 30, 1921 by an interstate compact, approved by Congress, between the states of New York and New Jersey. N.J.S.A. 32:1-1. The compact established the Port Authority as a joint and common agency of the two states to assist commerce, transportation and development. N.J.S.A. 32:1-1. The Port Authority consists of twelve commissioners, six from each state, appointed by the governors of each state. N.J.S.A. 32:1-5; N.J.S.A. 32:2-3.
In 1951, by joint legislative action in both compact states, the Port Authority's sovereign immunity to suit was waived. N.J.S.A. 32:1-157; N.Y.Unconsol.Law § 6688 (McKinney 1987). "The waiver of sovereign immunity is not affected by any statute of general application moderating the common law rule of sovereign immunity such as the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq." Port Auth. of New York v. Ingram, 232 N.J. Super. 401, 404, 557 A.2d 337 (App.Div. 1989). See Bell v. Bell, 83 N.J. 417, 416 A.2d 829 (1980) (holding that the bi-state Delaware River Port Authority is not a public entity within the New Jersey Tort Claims Act).
*17 Pursuant to N.J.S.A. 32:1-157, -163, the Port Authority has waived its sovereign immunity for claims arising under the workers' compensation laws of both states. This court recognized that employees of the Port Authority are covered by the workers' compensation law of our State in Feeley v. Port of New York Authority, 53 N.J. Super. 233, 147 A.2d 105 (App. Div. 1958). Port Authority employees have been able to elect coverage under our workers' compensation Act pursuant to N.J.S.A. 34:15-7 and their union agreement. The parties to this action have agreed that employees of the Port Authority, including the petitioner, participate in the pension program of the State of New York.
The Port Authority is a corporate and political body, with the power and authority to purchase, construct, lease, operate transportation facilities, charge for the use of such facilities and borrow money. N.J.S.A. 32:1-7. It has the power to determine its policies and control its activities and, as such, exercises traditionally governmental functions. It has been held to be a "political subdivision" under the federal Internal Revenue Act. Commissioner of Internal Revenue v. Shamberg's Estate, 144 F.2d 998, 999-1000 (2d Cir.1944), cert. denied, 323 U.S. 792, 65 S.Ct. 433, 89 L.Ed. 631 (1945) (holding Port Authority bonds exempt from federal income taxation). It functions as an agency of the compacting states, rather than a body comparable to a county or municipality. Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of New York & New Jersey, 819 F.2d 413, 417 (3d Cir.), cert. denied, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987) ("the Authority is a direct agency of the states rather than an independent corporation"). Our Court has discussed the character of the Port Authority:
Thus it was held that the Port Authority is a "direct state agency, exercising a governmental function." [Miller v. Port of New York Authority,] 18 N.J. Misc. [601,] 606 [, 15 A.2d 262] [(1940)]. It has been elsewhere described as "`an organic whole, split between the lawmaking of two states ... a joint or common agency of the states of New York and New Jersey. It performs governmental functions which project beyond state lines.'" Whalen v. Wagner, 4 N.Y.2d 575, 176 N.Y.S.2d 616, [619,] 152 N.E.2d 54, 57 (N.Y. 1958). As that court said, *18 "[q]uotations of this nature could be multiplied indefinitely...." Ibid. Furthermore, it has been determined to be a "political subdivision" of a state or territory "to which has been delegated the right to exercise part of the sovereign power of the State or Territory." Commissioner of Internal Rev. v. [S]Hamberg's Estate, 144 F.2d 998, 999, 1000 (2d Cir.1944), cert. den. 323 U.S. 792, 65 S.Ct. 433, 89 L.Ed. 631 (1945). There is no doubt that the Port Authority as a state governmental agency is exempt from the bar of the Statute of Limitations. [Port Auth. of New York v. Bosco, 193 N.J. Super. 696, 700, 475 A.2d 676 (App.Div. 1984).]
Thus, New Jersey has significant control and governance over the Authority.
Whether the Port Authority is actually included under N.J.S.A. 34:15-43, however, is critical to the interpretation of the prohibition against collection of dual benefits by former employees. The compensation judge determined that the Legislature's express reference to the Palisades Interstate Park Commission, another bi-state agency, without reference to the Port Authority, indicated that the prohibition did not apply to Port Authority employees who are receiving an accidental disability pension. Petitioner urges us to follow reflexively the compensation judge's adherence to the principle of statutory construction expressio unius est exclusio alterius, i.e., express mention of one thing implies exclusion of all others. Petitioner contends that by expressly bringing the Palisades Interstate Park Commission within the scope of N.J.S.A. 34:15-43 without mentioning any other interstate or bi-state agencies, either specifically or generally, the Legislature clearly intended to exclude all such other agencies from the dual benefits prohibition. He does not suggest the implicit corollary, an intent to remove the bi-state agency from the workers' compensation act completely.
The Fund maintains that the statute mentions the Palisades Interstate Park Commission in order to address the very special circumstances and needs of that particular agency. It contends that the Park Commission's responsibilities and activities are unusual, if not unique, as contrasted with other bi-state agencies, "so unusual, in fact, as perhaps to cause doubt whether that bi-state agency is [even] a `governing body' in the same *19 sense as the others." The objective of the Park Commission is not to aid and advance commerce and transportation but preservation "of a natural and historic resource of immeasurable value." N.J.S.A. 32:14-1.1. As such, the Park Commission uses many volunteers to carry out its objectives.
In enacting L. 1987, c. 259, the Legislature approved a series of amendments carefully directed to the needs of volunteers of the Park Commission: N.J.S.A. 32:14-4 was amended to include Park Commission volunteers as employees of the State for workers' compensation purposes ("persons participating under the supervision of the commission, in volunteer programs in that part of the Palisades Interstate Park located in New Jersey, shall be deemed employees of this State."); and the Tort Claims Act, N.J.S.A. 59:1-3, was amended to include park volunteers in the definitions of "employment" and "public employee" for immunity purposes. Several amendments were also made to the workers' compensation statute: N.J.S.A. 34:15-10 (exemption for punitive awards to children) was amended to include teenage Park Commission volunteers under 18; and N.J.S.A. 34:15-43, the statute under our consideration, was amended to include individuals under the general supervision of the Park Commission within its coverage.
The legislative statement accompanying the amendment, Senate No. 508, October 2, 1986, said that the law "would provide volunteers in that part of the Palisades Interstate Park which is located in this State with workers' compensation coverage and protection under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. Palisades Park volunteers on the New Jersey side of the park would then be entitled to protection similar to that enjoyed by volunteers on the New York side of the park." Volunteers, who before this were typically not considered employees, were thus expressly covered for workers' compensation and immunity purposes.
The legal maxim relied upon by the judge, expressio unius est exclusio alterius, is an interpretive aid to discerning *20 intention and not a rule of law. The maxim should be used with "great caution," and the implication "must be clear and compelling," not conjectural. Gangemi v. Berry, 25 N.J. 1, 11, 134 A.2d 1 (1957). "Blind and mechanical application can often lead ... to an `improper interpretation' of the statute being construed." Allstate Ins. Co. v. Malec, 104 N.J. 1, 8, 514 A.2d 832 (1986). As in all matters of statutory interpretation, the issue is one of intention. Reilly v. Ozzard, 33 N.J. 529, 539, 166 A.2d 360 (1960). The ultimate question is "whether in a given context an express provision with respect to a portion of an area reveals by implication a decision with respect to the remainder." Ibid.
Here, the express mention of the Park Commission in § 43 does not really reveal to us anything about intended treatment of other bi-state agencies. In fact, L. 1987, c. 259's amendments to N.J.S.A. 32:14-4, 34:15-10, -43, as they relate to the Park Commission, deal with the treatment of volunteers and individuals who are under the general supervision of the Park Commission only, not the more generic question of dual recovery by bi-state agency employees. The Legislature was addressing one particular aspect of the Palisades Park Commission personnel structure, volunteers, and indicated no intent at all about other bi-state agencies. The preamble of the 1987 amendatory act states: "An act concerning persons participating in volunteer programs in that part of the Palisades Interstate Park located in New Jersey, ..." L. 1987, c. 159. This was precisely targeted legislation, not a blunderbuss.
We conclude that the legislative intent of the 1987 amendment was specific and narrow: only to give volunteers of the Palisades Interstate Park workers' compensation and tort immunity. We find there was absolutely no intent to undermine the previously manifested policy against dual recovery of both an accidental disability pension and permanent workers' compensation disability benefits against a governmental body of this State.
*21 The Fund also strenuously maintains that the dual recovery of benefits is starkly contrary to the underlying spirit and intent of the statute. Petitioner is currently benefitting from two major components of the social compensation safety net: an accidental disability pension and social security disability benefits. He now seeks permanent workers' compensation benefits as well. But N.J.S.A. 34:15-43 and 43:15A-25.1(b), bar the simultaneous recovery of workers' compensation and disability pension benefits. Our case law has buttressed the legislative intent manifested by these provisions: to prevent double recovery. E.g., Swan v. Board of Trustees of Teacher's Pension Fund, 85 N.J. Super. 226, 231, 204 A.2d 371 (App.Div. 1964). See also Flynn v. Union City, 32 N.J. Super. 518, 108 A.2d 629 (App.Div. 1954), certif. denied, 17 N.J. 253, 111 A.2d 321 (1955).
As the Fund suggests, our cases historically have distinguished between an "employee" and a "pensioner." "A person in public employment who ... accepts a pension for disability arising from a compensable accident severs the relationship of employer and employee. He becomes a `former employee,' and the statutory bar to workmen's compensation is applicable." Pirher v. Board of Public Works of South River, 37 N.J. Super. 482, 484, 117 A.2d 615 (App.Div. 1955), certif. denied, 20 N.J. 465, 120 A.2d 66 (1956). See also Breheny v. Essex County, 136 N.J.L. 524, 525, 57 A.2d 26 (E & A 1948) ("A person cannot be both an employee and a pensioner, he must be one or the other.").
In 1971 the Legislature enacted N.J.S.A. 43:15A-25.1(b), L. 1971, c. 213, § 46, which effectively modified N.J.S.A. 34:15-43, and permitted the approval of retirement benefits while the employee was still receiving workers' compensation benefits as long as there was an offset in the disability pension until the compensation benefits were paid off. Our Supreme Court, in Conklin v. City of East Orange, 73 N.J. 198, 373 A.2d 996 (1977), clarified the interaction of these two provisions, and held that the double-benefit bar applies to the simultaneous receipt *22 of compensation and disability benefits but does not bar an employee from making an election of the more advantageous of the two, without being bound by the happenstance of the first benefit selected.
Our Supreme Court comprehensively detailed the legislative history of the Workers' Compensation and Disability Pension Acts in In re Application of Smith, 57 N.J. 368, 273 A.2d 24 (1971). The Court interpreted N.J.S.A. 34:15-43's design to prevent a double recovery of public funds for the same disability this way:
In combination, the enactments involved here say that a former public employee who has retired on an accidental disability pension cannot be granted workmen's compensation benefits for the same disability, and if the employee elects to receive workmen's compensation initially no subsequent pension for the total disability arising from the accident can be approved for him while he is receiving compensation. In total effect they clearly reveal the lawmakers' intention not to allow a public employee to receive concurrent pension and compensation benefits for the same disability. [Id. at 380, 273 A.2d 24.]
However, our courts have allowed an injured employee to receive both a New Jersey disability pension and New Jersey workers' compensation benefits so long as each is being paid from a separate employer as the source. Loges v. Town of Newton, 5 N.J. Super. 433, 69 A.2d 556 (App.Div. 1949), aff'd o.b. sub. nom., Kays v. Town of Newton, 4 N.J. 356, 73 A.2d 64 (1950). In Loges, a volunteer fireman for the town of Newton was injured while performing his duties. At the time of his injury, he also maintained a job in Sussex County as a janitor. He began receiving a workers' compensation award from one and a disability pension from the other. The State argued that Loges could not recover double benefits; however, we distinguished this situation from others:
The clear distinction arises from the fact that in both the Reinhold [v. Town of Irvington, 134 N.J.L. 416, 48 A.2d 641 (Sup. 1946)] and the DeLorenzo [v. Board of Com'rs of City of Newark, 134 N.J.L. 7, 45 A.2d 686 (E & A 1948)] cases the municipality was the source from which both compensation and pension payments would be paid, hence the recipient of both would be receiving double payment from a single employer. Breheney v. Essex County, 136 N.J.L. 524 (E & A 1948)....
The payments [herein] do not spring from one employer but from two distinct employers and we read R.S. 34:15-43 as containing an express prohibition in *23 the former situation but none as to the latter. [5 N.J. Super. at 435, 69 A.2d 556 (emphasis added).]
This holding suggests that the policy against double recovery is not offended if the injured employee received benefits from the funds of two separate governmental entities, both of which are within this State. The Port Authority and the Fund distinguish Loges on the ground that Loges worked for two separate municipal employers and for this reason alone was eligible for both workers' compensation and disability pension benefits. The Port Authority Police Benevolent Association amicus, and petitioner, both argue that neither our statute nor the policy it manifests is offended if an injured employee recovers benefits from the funds of another state, here the New York State Pension Fund, in addition to funds from this State, under our workers' compensation act. The amicus and petitioner contend that no double recovery from funds of this State would thus occur.
In the case before us, the Port Authority is a single employer, one governmental body, and petitioner, in our view, should not be entitled to both a disability pension and workers' compensation benefits from the same governmental employer, no matter how the benefits are funded or derived. Loges was based on dual public employment, not dual sources of funding. The Fund and the Port Authority also point out that Loges was decided before the 1971 enactment of N.J.S.A. 43:15A-25.1(b) which, as noted, specifically bars an employee from receiving a simultaneous disability pension and compensation benefits.
No doubt the workers' compensation law confers a needed benefit on injured employees. Any provision which is alleged to effect a withholding of that benefit should be strictly construed against forfeiture. In re Application of Smith, 57 N.J. 368, 374, 273 A.2d 24 (1971); Swan v. Board of Trustees of Teachers' Pension & Annuity Fund, 85 N.J. Super. 226, 231, 204 A.2d 371 (App.Div. 1964). And any such withholding or offset must be specifically authorized by statute.
*24 We conclude that a bi-state agency, such as the Port Authority, must be included within the concept of "governing body" under N.J.S.A. 34:15-43 for both recovery of workers' compensation benefits purposes and the prohibition against a dual recovery of accidental disability pension benefits and periodic permanent disability benefits for workers' compensation. Of course, N.J.S.A. 34:15-43 itself preserves the employees right to all medical benefits under N.J.S.A. 34:15-15 of the workers' compensation act. The prohibition against dual recovery only relates to the periodic disability payments, not to basic eligibility.
The mention of the Palisades Interstate Park Commission in N.J.S.A. 34:15-43 was introduced in 1987 to cover a specific, if not unique, situation  volunteers who worked in the Palisades Park. The 1987 amendment was not intended to diminish the impact of the bar on a dual recovery of economic benefits from a single governmental employer, a policy with strong historical and rational roots. This policy perhaps is even more pronounced in this situation where the Fund, supported by annual New Jersey employer assessments, see N.J.S.A. 34:15-94, is implicated and will probably be obligated for lifetime payments to petitioner after 1996. The Fund now is compelled to pay 1/3 of the periodic amounts up to that date. The Fund should be tapped consistent with its purpose, hiring the partially handicapped, and not mulcted or strained unduly for recovery of dual benefits as petitioner here urges.
The New York State Police pension fund's presence as the source of petitioner's pension does not alter our view. The true pension source is ultimately, of course, the bi-state (New York and New Jersey) employer, the Port Authority, and its contributing employees. This partially New Jersey employer is the sole source of the workers' compensation award. We can not overlook here that we are still concerned with essentially governmentally-funded social benefits, no matter which agency of government pays, not some remote and inexhaustible source of munificence. As we noted, the New York statute prohibits a *25 dual recovery under that state's scheme. N.Y. Retire. & Soc. Sec. Law § 364 (McKinney 1987). The New York statute does not speak to the New Jersey, or any other out-of-state scheme, but our statute surely does and we will not reject it lightly. We also resist petitioner's contention that the aberrational result of the dual recovery which he seeks must be remedied legislatively or by contract negotiation, not by statutory construction. We find the legislative intent clear from an overall consideration of the relevant statutes. The issue is intention, and we find the intention against dual recovery clear. "The answer resides in the common sense of the situation." Reilly v. Ozzard, 33 N.J. 529, 539, 166 A.2d 360 (1960); see Wildwood Storage Center v. Mayor & Council, 260 N.J. Super. 464, 616 A.2d 1331 (App.Div. 1992).
Reversed.
NOTES
[1] The New York statute states:

§ 364. Payment of both pensions for accident and other benefits prohibited
a. If any benefits under the workers' compensation law may be or become payable as the result of accidental disability or accidental death, no payment of any benefit shall be made pursuant to this article on account of such disability or death until there shall have been a final determination of the claim for workers' compensation benefits. Pending such final determination, however, the comptroller may authorize payment of all or any part of the benefits payable under this chapter, and in that event, shall be entitled to reimbursement out of the unpaid installment or installments of compensation due under the workers' compensation law provided that claim therefor is filed pursuant to the provisions of such law. Any pension, payable pursuant to this article on account of any such disability or death, shall be reduced by the amount of the benefits that are finally determined to be payable under the workers' compensation law by reason of such disability or death. Such reduction shall be effectuated as follows:
1. Pension installments shall be reduced by the amount of the concurrent workers' compensation benefits.
2. The pension reserve on account of a pension so payable shall be reduced by the amount of the lump sum workers' compensation benefits. In such case the pension thereafter payable shall be the actuarial equivalent of the pension reserve as so reduced.
No such reduction shall be made, however, for the amount of medical, surgical, or other attendance or treatment, nurse and hospital service medicine, crutches or apparatus and of any funeral expenses provided under the workers' compensation law in addition to regular compensation benefits, or of any legal fees awarded under the workers' compensation law. [N.Y. Retire. & Soc. Sec. Law § 364(a) (McKinney 1987).]
[2] The Fund neglected to mention in its brief and at oral argument that the employer receives the benefit of an offset under N.J.S.A. 34:15-95.5 and 42 U.S.C.A. § 424a(a)(5) against the obligation to pay periodic disability benefits under the state workers compensation statute based on the employee's "average current earnings" where the employee also receives federal disability benefits in addition to the workers' compensation payments. See Ries v. Harry Kane, Inc., 195 N.J. Super. 185, 478 A.2d 1195 (App.Div. 1983). There is no comparable offset with respect to an accidental disability pension. This offset expires at age 62 when social disability benefits automatically change to social security retirement benefits.