653 A.2d 1170

JOHN R. BUNK, PETITIONER–APPELLANT/CROSS RESPON-
DENT, v. PORT AUTHORITY OF NEW YORK AND NEW JER-
SEY, RESPONDENT/CROSS APPELLANT, AND SECOND INJU-
RY FUND, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 24, 1995—Decided February 22, 1995.

614

Before Judges PRESSLER, LANDAU and NEWMAN.

*Alfred G. Osterweil* argued the cause for appellant/cross respondent (*Cynthia A. Rollenhagen,* attorney; *Patricia A. Delo,* on the brief).

*Christopher J. Neumann* argued the cause for respondent/cross appellant (*Hugh H. Welsh,* Deputy General Counsel, of counsel; *Mr. Neumann,* on the brief).

*Nancy J. Shebell,* Deputy Attorney General, argued the cause for respondent Commissioner of Labor as Custodian of the Second Injury Fund (*Deborah T. Poritz,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, and *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Ms. Shebell,* on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

In *Wright v. Port Authority,* 263 *N.J.Super.* 6, 621 *A.*2d 941 (App.Div.), *certif. denied,* 133 *N.J.* 442, 627 *A.*2d 1147 (1993), this court held that an employee of the Port Authority of New York and New Jersey who is totally disabled as a result of that employment is not entitled to a workers' compensation award in this State if he is receiving a disability pension from the State of New York. Following that decision, the United States Supreme Court issued its opinion in *Hess v. Port Authority Trans–Hudson,* 513 *U.S.* ——, 115 *S.Ct.* 394, 130 *L.Ed.*2d 245 (1994), in which its denial of Port Authority's claim of Eleventh Amendment immunity from suit in the federal court required reexamination of the corporate structure of Port Authority and its relationship to New York and New Jersey. Consideration of *Wright* in the light of *Hess* constrains us to disagree with the result we there reached. We are now satisfied that simultaneous receipt by a Port Authori-

ty employee of New Jersey compensation benefits and a New York disability pension is not interdicted by our statutes.

Petitioner John R. Bunk, then an employee of Port Authority for some five years, sustained a work-connected injury on September 6, 1988, while driving a truck on the Triborough Bridge. The brakes failed, and he struck a wall and several other vehicles. He was ultimately found by the judge of workers' compensation to be totally disabled by reason of his ensuing orthopedic and neurological injuries. Accordingly, the judge dismissed the claim made by petitioner against the Second Injury Fund. The judge nevertheless concluded, relying on *Wright*, that because petitioner was by then receiving a disability pension from the State of New York based on the truck-accident injuries, he was not eligible to receive workers' compensation benefits for those injuries under the law of New Jersey.

Subsequent to filing his claim petition relating to the September 1988 accident, petitioner filed a second petition seeking benefits based on occupational injury. He claimed that during the period of his employment he was constantly exposed to dirt, dust, noxious fumes, and other irritants, resulting in pulmonary, ophthalmologic, otologic and nasopharyngeal disease. Following the joint trial of the two petitions, the judge concluded that petitioner had proved a total of twelve and a half percent of permanent partial total disability based on occupational injury.

Petitioner appeals from the denial of benefits for his total disability referable to the truck accident. Port Authority cross appeals from the allowance of the partial total disability award for occupational injury. We reverse both judgments.

We address first the so-called double recovery issue. As we pointed out in *Wright*, the inter-relationship between disability pension benefits and workers' compensation benefits available to a public employee in this State is defined by *N.J.S.A.* 34:15-43 and *N.J.S.A.* 43:15A-25.1(b) as synthesized by *Conklin v. City of East Orange*, 73 *N.J.* 198, 373 *A.*2d 996 (1977). *N.J.S.A.* 34:15-43, in general terms, provides that although public employees are enti-

tled to workers' compensation benefits pursuant to *N.J.S.A.* 34:15–7, *et seq.,* they are disqualified from receipt of those benefits, except for medical treatment and expenses, if they are retired on pension by reason of the same disability or injury for which compensation benefits are claimed. As explained by *In re Application of Howard Smith,* 57 *N.J.* 368, 380, 273 *A.*2d 24 (1971), the effect of that disqualification was to require a public employee to make a binding election between the available pension benefits and the available compensation benefits. He could obtain either but not both in view of the Legislature's clearly evinced intention "not to allow a public employee to receive concurrent pension and compensation benefits for the same disability." This scheme was substantially altered in 1971 with respect to all the major public employee pension funds, including the Public Employees' Retirement System, *N.J.S.A.* 43:15A–1, *et seq.;* the Police and Firemen's Retirement System, *N.J.S.A.* 43:16A–1, *et seq.;* and the Teachers' Pension and Annuity Funds, *N.J.S.A.* 18A:66–1, *et seq.* By adoption in that year of *N.J.S.A.* 43:15A–25.1(b), *N.J.S.A.* 43:16A–15.2, and *N.J.S.A.* 18A:66–32.1b(b), a public employee who is totally disabled by reason of work-related disability is permitted to obtain his pension benefits while also receiving periodic workers' compensation benefits provided, however, that the amount of the pension benefit payable is reduced by the amount of the compensation benefits received. The Court in *Conklin, supra,* 73 *N.J.* at 204, 373 *A.*2d 996, construed the pension statute amendments as having, by necessary implication, effectively amended *N.J.S.A.* 34:15–43 as well with the "net effect ... that the retired public employee is entitled to receive the more advantageous of the benefits payable under the respective statutory provisions."

■■ The question then is whether this integrated scheme of workers' compensation and pension act provisions applies to Port Authority employees. *Wright* answered that question affirmatively, concluding that Port Authority is a governing body within the intendment of *N.J.S.A.* 34:15–43, which defines a covered employee as

Every officer, appointed or elected, and every employee of the State, county, municipality or any board or commission, or any other governing body, including boards of education, and governing bodies of service districts, individuals who are under the general supervision of the Palisades Interstate Park Commission and who work in that part of the Palisades Interstate Park which is located in this State, and also each and every member of a volunteer fire company doing public fire duty and also each and every active volunteer, first aid or rescue squad worker, including each and every authorized worker who is not a member of the volunteer fire company within which the first aid or rescue squad may have been created, doing public first aid or rescue duty under the control or supervision of any commission, council, or any other governing body of any municipality, any board of fire commissioners of such municipality or of any fire district within the State, or of the board of managers of any State institution, every county fire marshal and assistant county fire marshal and every special, reserve or auxiliary policeman doing volunteer public police duty under the control or supervision of any commission, council or any other governing body of any municipality, who may be injured in line of duty shall be compensated under and by virtue of the provisions of this article and article 2 of this chapter....

It held, therefore, that since workers' compensation benefits obtained in New Jersey are not offset against a disability pension paid by New York, a Port Authority employee receiving the New York pension is not entitled to any New Jersey compensation benefits. We agree with *Wright* that Port Authority, although an agency created by bi-state compact, has many characteristics of a body politic and corporate. We are nevertheless constrained to conclude that the term "other governing body" as used by *N.J.S.A.* 34:15–43 means either a governing body of this State or a governing body whose New Jersey employees are subject to the unilateral exercise of this State's legislative authority. Port Authority is neither. We therefore find no impediment in the New Jersey statutory scheme to a Port Authority employee receiving both his New York pension and his adjudicated New Jersey compensation benefits.

We base this conclusion on a construction of the pertinent statutory language in the light of the policy considerations underlying the double-recovery bar of *N.J.S.A.* 34:15–43. It is obvious that public funds not only pay the salaries of public employees but also support, in substantial measure, their entitlements to both workers' compensation benefits and pension benefits. The double-recovery bar is designed, therefore, to protect the public fisc—

both the pension funds themselves and the taxpayer dollars required to afford compensation benefits. Thus, while the public employee is entitled to choose the most advantageous combination of benefits available to him in the circumstances, he may not receive both in full measure. We are satisfied that Port Authority, by reason of its structure, financing, and employee relations and benefits, is entirely outside of these fiscal concerns and hence outside of the statute.

To begin with, and in critical contradistinction to other public employees covered by *N.J.S.A.* 43:15–43, employees of Port Authority are not members of any New Jersey pension system. Port Authority has elected to join the New York State and Local Employees Retirement System. Thus the pension rights and obligations of all Port Authority employees are subject to and determined by New York law, and New Jersey bears absolutely no financial or administrative responsibility therefor at all. Consequently, the necessity of protecting the financial integrity of New Jersey's public pension funds simply does not come into play when dealing with a Port Authority employee. Beyond that, irrespective of how expansively "governing body" as used by *N.J.S.A.* 34:15–43 may be defined, it is nevertheless clear that the double-recovery bar itself is stated in terms of pension entitlements. The precise language of *N.J.S.A.* 34:15–43 reads as follows: "No former employee who has been retired on pension by reason of injury or disability shall be entitled under this section to compensation for such injury or disability. . . ." The prohibition does not use the full phrase "no former *public* employee," but that is obviously what it means since the statute addresses only public employees. By the same token, the statute does not say "retired on a *public* pension." But we think it plain that that is what the statute means and that it means, moreover, a New Jersey public pension. Indeed, for purposes of defining "governing body" within the legislative intendment of *N.J.S.A.* 34:15–43, an appropriate test of inclusion is whether its employees are enrolled in a New Jersey public employee retirement system.

We are further satisfied that the second of the fiscal concerns justifying the double-recovery bar, that is, the cost in New Jersey taxpayer dollars of affording workers' compensation benefits to public employees, is also not implicated when Port Authority employees are injured on the job. As made clear by the United States Supreme Court in *Hess, supra,* 513 *U.S.* at ——, 115 *S.Ct.* at 398–399, 130 *L.Ed.*2d at 253, the operations of Port Authority are not funded by public dollars. Thus,

"The Port Authority was conceived as a financially independent entity, with funds primarily derived from private investors." *United States Trust Co. of N.Y. v. New Jersey,* 431 *U.S.* 1, 4, 97 *S.Ct.* 1505, [1509] 52 *L.Ed.*2d 92 (1977). Tolls, fees, and investment income account for the Authority's secure financial position.

. . . .

Debts and other obligations of the Port Authority are not liabilities of the two founding States, and the States do not appropriate funds to the Authority. The compact and its implementing legislation bar the Port Authority from drawing on state tax revenue, pledging the credit of either State, or otherwise imposing any charge on either State.

[513 *U.S.* at —— – ——, 115 *S.Ct.* at 398–399, 130 *L.Ed.*2d at 253–254.]

In this posture, it is clear that the Port Authority's employee costs are not borne directly by taxpayer dollars but rather by the users of the services provided. *Cf. Lefkin v. Venturini,* 229 *N.J.Super.* 1, 10, 550 *A.*2d 985 (App.Div.1988), noting that the predicate of the workers' compensation legislation is the provision of monetary relief for injured workers "by a system in which the cost of industrial accidents is borne by the consumer as part of the cost of the product or service." We do not suggest that this factor alone would necessarily be conclusive, and we recognize that there are other public entities covered by the statute whose revenues are consumer-based rather than dependent upon tax dollars. Nevertheless, we are persuaded that when an entity's operations substantially implicate *neither* the taxpayer dollars of residents of this State nor public employee pension funds of this State, there is no warrant in policy or statutory construction for including that agency as a governing body subject to the bar of *N.J.S.A.* 34:15–43.

Reexamining the text of *N.J.S.A.* 34:15–43 in light of the foregoing, we regard the specific reference to the Palisades Interstate Park Commission (PIPC), also a bi-state agency of New York and New Jersey, in the express list of "any other governing body" as bespeaking the exclusion, not the inclusion, of Port Authority. We discussed in *Wright* the legislative purpose of *L.*1987, *c.* 259, by which volunteers of PIPC working within the territorial boundaries of this State were accorded much of the protection and status of New Jersey public employees. *See Wright, supra,* 263 *N.J.Super.* at 18–19, 621 *A.*2d 941. One of those protections was the express inclusion of such volunteers as public employees embraced by *N.J.S.A.* 34:15–43 and therefore entitled to workers' compensation. What we did not consider in *Wright,* however, was that paid employees of PIPC working in this State were already covered by *N.J.S.A.* 34:15–43. In this regard, we point out that the source of New Jersey's power unilaterally to legislate with respect to any PIPC employees derives from the original compact which vouchsafed to each State the right, without the concurrence of the other, to enact legislation to "withdraw, modify, alter or amend any of the functions, jurisdiction, rights, powers and duties transferred to the commission . . ." provided that such unilateral action "shall be effective only within the territorial limits of such state." *N.J.S.A.* 32:17–5. Accordingly, New Jersey has long since legislatively declared that PIPC employees working in this State and those paid from funds appropriated by or attributable to this State "shall be deemed to be employees of this State," not only qualified for membership in New Jersey's Public Employees' Retirement System, but also, if "employed wholly or partly in this State," subject to this State's workers' compensation laws. *N.J.S.A.* 32:14–4. Moreover, *N.J.S.A.* 43:15A–73(a) expressly directs the Public Employees' Retirement System to enroll eligible employees of, among others, the Palisades Interstate Park Commission. Clearly, then, for purposes of *N.J.S.A.* 34:15–43, PIPC would have been an included governing body in respect of its New Jersey employees even without the 1987 amendment, the underlying purpose of which, as

explained by the accompanying statement of the Assembly Labor Committee, was to extend the workers' compensation coverage already afforded to New Jersey employees of PIPC to PIPC volunteers working within the geographical boundaries of this State.

We are unable to discern any parallel or analogous scheme provided by compact or state legislation authorizing unilateral control by this State over any identifiable group of Port Authority employees. *See generally N.J.S.A.* 32:1–1 to –176 and 32:2–1 to –36. Port Authority is not included in the list of those agencies whose employees or any of them are, by reason of *N.J.S.A.* 43:15A–73(a), eligible for membership in the Public Employees Retirement System.[1] We therefore concur with petitioner's contention that Port Authority employees are not entitled to New Jersey workers' compensation benefits by reason of *N.J.S.A.* 34:15–43 but rather by reason of *N.J.S.A.* 32:1–157, which acknowledged the mutual consent of New York and New Jersey to suit against the Port Authority in any forum. Thus we conclude that it is under *N.J.S.A.* 34:15–7, applicable to employers generically, rather than under *N.J.S.A.* 34:15–43, specifically applicable to New Jersey's public entity employees, that Port Authority employees may seek compensation benefits in New Jersey.

We have other concerns as well in applying the double-recovery bar to Port Authority employees. As we have pointed out, they are members of New York's pension system. When the New Jersey Legislature prescribed a benefit package consisting of pension and workers' compensation benefits, as it did by the 1971 amendment of the pension system statutes, it did so based on

---

[1] We note that that list also includes the Interstate Sanitation Commission, the Delaware River Basin Commission and the Delaware River Joint Toll Bridge Commission. We leave for another day the consideration of whether their employees are subject to the double-recovery bar of *N.J.S.A.* 34:15–43. We further note, as made clear by *Wright,* that Port Authority employees performing law enforcement functions are not eligible for membership in the New Jersey Police and Fireman's Retirement System.

legislative provisions, benefit levels, actuarial predicates, and social-remediation concerns all of which were within its control since, of course, both the workers' compensation scheme and the pension scheme as well as the manner in which they work together are matters subject to its exclusive authority. Obviously, no such legislative integration of pension and compensation benefits is possible where the pension benefits are within the exclusive control of one state and the compensation benefits within the exclusive control of another.

That observation brings us to the whole notion of double-recovery in its application here. According to the record in this case, petitioner was awarded an ordinary disability pension by New York providing him with one-third of his salary.[2] We think it plain that even if New Jersey's compensation benefits for total disability are added thereto, the sum petitioner would receive during the remainder of what would have been his working life is not comparable to what he would have earned if he had not been totally disabled on the job. We do not suggest that the aggregate package of benefits provided by remedial social legislation to totally disabled employees must equal their salary loss. This is particularly so when the benefits are provided primarily at public expense. Our point, however, is that there is not functionally a double recovery, at least in any pejorative sense, until the benefit package exceeds the wage loss, and that is patently not the case here. Beyond that, we find it anomalous that while all other public employees who are subject to *N.J.S.A.* 34:15-43 are entitled to choose the most advantageous package of benefits, only Port Authority employees would not be. We do not believe the Legis-

---

[2] According to the record, New York provides for both an ordinary disability pension with a maximum benefit of one-third of salary and a strictly administered accidental disability pension providing a benefit of three-quarters of salary. The accidental disability pension but not the ordinary disability pension is subject to a setoff for New York compensation awards. Thus where New York provides both the compensation benefits and the pension benefits, it maintains an integrated scheme between them, as does New Jersey in similar circumstances.

lature intended that only those employees would continue to be burdened by the harsh strictures that were ameliorated for all other public employees by the 1971 pension amendments.

We find instructive in this regard the observations made by the Supreme Court in *In re Application of Howard Smith, supra,* 57 *N.J.* at 374, 273 *A.*2d 24. There Justice Francis pointed out that the double-recovery bar of *N.J.S.A.* 34:43–15 must be strictly construed, that the pension and compensation laws must be "interpreted favorably to the public employee" and that neither a restriction against full pension entitlements and full workers' compensation entitlements should be imposed "except upon an express or implied legislative mandate which leaves no doubt of the purpose." Thus, as the Court pointed out:

And since the purpose of *N.J.S.A.* 34:15–43 is to withhold benefits that ordinarily would go to public employees who suffer injury arising out of or in the course of their employment, it has been strictly construed. *Swan v. Board of Trustees of Teachers' Pension and Annuity Fund,* 85 *N.J.Super.* 226, 231 [204 *A.*2d 371] (App.Div.1964). Consequently its bar against receipt of compensation and a pension arising out of the same accident does not apply to dependents of a deceased employee since it speaks in terms of a living employee, *Eckert v. New Jersey State Highway Dept.,* 1 *N.J.* 474 [64 *A.*2d 221] (1949); nor to a person on an ordinary retirement pension based on age and service, as distinguished from a work-connected disability allowance, *Pisapia v. City of Newark,* 47 *N.J.Super.* 353 [136 *A.*2d 67] (Cty.Ct.1957); nor where a person had two public employments, one with a municipality and the other with a county, and he is receiving a workmen's compensation award from one and a disability pension from the other. *Loges v. Town of Newton,* 5 *N.J.Super.* 433 [69 *A.*2d 556] (App.Div.1949), aff'd o.b., *sub nom. Kays v. Town of Newton,* 4 *N.J.* 356 [73 *A.*2d 64] (1950).

Following the dictates of *Smith,* we cannot conclude, even if there were an arguable constructional basis for including Port Authority as a "governing body" subject to *N.J.S.A.* 34:15–43, that the present text of and public policy expressed by that statute constitutes an unmistakable legislative mandate to bar Port Authority employees from receipt of a compensation award in New Jersey.

With respect to Port Authority's cross appeal, we are first satisfied that there was substantial credible evidence supporting the judge's findings with respect to occupational injury, and we will therefore not disturb them. *See Close v. Kordulak Bros.,* 44 *N.J.* 589, 210 *A.*2d 753 (1965). *And see R.* 2:11–3(e)(1)(D).

 The more difficult question, however, is whether, as Port Authority urges, petitioner's total award for a single period of employment by a single employer is limited to one hundred per cent of total permanent disability despite the fact that during that period he sustained both a totally disabling injury and a different partially disabling injury. It is clear that a worker who is held to be one hundred per cent disabled, who later returns to work for a different employer and who then sustains a different injury is entitled to benefits from the second employer for that later injury. *See Mayti v. Singer Mfg. Co.*, 76 *N.J.Super.* 379, 382–383, 184 *A.*2d 670 (Cty.Ct.1962), *aff'd on other grounds,* 79 *N.J.Super.* 556, 558, 192 *A.*2d 310 (1963). But is also clear that an employee who is adjudicated totally disabled based on several different injuries and exposures sustained during a single period of employment is not thereafter entitled to an increase in compensation based on the aggravation of one component injury. *Taylor by Taylor v. Engelhard Industries,* 230 *N.J.Super.* 245, 553 *A.*2d 361 (App.Div. 1989). While the precise issue before us does not appear to have been addressed in a reported decision of this State, we are satisfied that the rationale of both *Mayti* and *Taylor* precludes recovery of more than one hundred per cent for different injuries sustained during the same employment period. Had a single claim petition been filed, as petitioner had the option to do, we think it plain that the award could not have exceeded one hundred per cent of total despite the multiple injuries. We do not see how that result can be altered simply by the filing of multiple petitions. We, therefore reverse the judgment awarding petitioner twelve and a half percent .of permanent partial disability.

The judgment denying total disability compensation is reversed, and we remand for entry of an appropriate judgment in petitioner's favor. The judgment awarding partial total benefits for occupational injury is also reversed.