676 A.2d 118

JOHN R. BUNK, PETITIONER–RESPONDENT, v. THE PORT AU-
THORITY OF NEW YORK AND NEW JERSEY, RESPONDENT–
APPELLANT, AND SECOND INJURY FUND, RESPONDENT–
APPELLANT.

Argued January 2, 1996—Decided May 22, 1996.

178 

*Michael D. Driscoll*, New Jersey Solicitor, argued the cause for appellant The Port Authority of New York and New Jersey (*Hugh H. Welsh*, Deputy General Counsel, attorney; *Mr. Welsh*, of counsel; *Christopher J. Neumann* and *George P. Cook*, on the briefs).

*Bertram P. Goltz, Jr.*, Deputy Attorney General, argued the cause for appellant Second Injury Fund (*Deborah T. Poritz*, Attorney General of New Jersey, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel).

*Alfred G. Osterweil* argued the cause for respondent (*Cynthia A. Rollenhagen*, attorney; *Mr. Osterweil* and *D. John McAusland*, on the briefs).

The opinion of the court was delivered by

O'HERN, J.

The question in this appeal is whether a worker entitled to receive workers' compensation benefits as an employee of one of the State's bi-state agencies receives those benefits on the same terms and under the same limitations as would other public employees in the State. We hold applicable to an employee of the bi-state agency the provisions of *N.J.S.A.* 34:15–43 (Section 43) that limit workers' compensation benefits of public employees receiving a disability pension for the same injury.

I

Plaintiff, John Bunk, is an employee of the Port Authority of New York and New Jersey (the Port Authority or PA). We may also refer to him as he would be known in the compensation

proceedings, as the "petitioner." Bunk is a resident of the State of New Jersey. On September 6, 1988, he was driving a Port Authority truck in New York City. The brakes of the truck failed. The truck struck a wall and several other vehicles, causing serious injuries to Mr. Bunk. The injuries left him unable to resume his regular employment with the Port Authority. Bunk applied for and received Social Security disability benefits. He also applied for and received a disability retirement pension from the Port Authority. (The Port Authority has elected to fund its public employees' retirement system through the New York State and Local Employees Retirement System.) The petitioner has also sought compensation for his injuries under the New Jersey workers' compensation system, *N.J.S.A.* 34:15–1 to –128. As a resident of New Jersey, Bunk can bring his action in New Jersey. *See Parks v. Johnson Motor Lines,* 156 *N.J.Super.* 177, 181, 383 *A.*2d 734 (App.Div.1978). The Compensation Judge would have awarded any necessary medical expenses for the petitioner but, believing that she was bound by Section 43, denied any award for the permanent disability related to the accident. When these proceedings commenced, Section 43 provided, in relevant part:

> Every officer, appointed or elected, and every employee of the State, county, municipality or any board of commission, or any other governing body, including boards of education, and governing bodies of service districts, individuals who are under the general supervision of the Palisades Interstate Park Commission and who work in that part of the Palisades Interstate Park which is located in this State, and also [other designated persons such as volunteer firefighters] who may be injured in line of duty shall be compensated under and by virtue of the provisions of this article and article 2 of this chapter (R.S. 34:15–7 et seq.). *No former employee who has been retired on pension by reason of injury or disability shall be entitled under this section to compensation for such injury or disability; provided, however, that such employee, despite retirement, shall, nevertheless, be entitled to the medical, surgical and other treatment and hospital services as set forth in R.S. 34:15–15.*

> . . . .

> Nothing herein contained shall be construed as affecting or changing in any way the provisions of any statute providing for sick, disability, vacation or other leave for public employees or any provision of any retirement or pension fund provided by law.

On appeal, the Appellate Division reversed. It concluded that *Hess v. Port Authority Trans–Hudson Corp.,* —— *U.S.* ——, 115 *S.Ct.* 394, 130 *L.Ed.*2d 245 (1994), had diminished the precedential value of *Wright v. Port Authority of New York and New Jersey,* 263 *N.J.Super.* 6, 621 *A.*2d 941 (App.Div.), *certif. denied,* 133 *N.J.* 442, 627 *A.*2d 1147 (1993), which had applied Section 43 to PA employees. *Hess* held that the PA was not, for purposes of Eleventh Amendment immunity, a public body of the State. We granted the Port Authority's petition for certification, 141 *N.J.* 99, 660 *A.*2d 1197 (1995). The Attorney General has intervened on behalf of the Second Injury Fund because the combination of this injury and other occupational diseases may have left Bunk totally and permanently disabled.

## II

We draw upon the history set forth in the petitioner's briefs to place the issues in this case in perspective. This review is not intended as a digest of pension or workers' compensation law but only to provide a general background to the issues before us.

*1911*—New Jersey passed its Workers' Compensation Law. *L.*1911, *c.* 95.

*1913*—The Legislature passed the predecessor to Section 43 for the purpose of waiving the State's sovereign immunity to suits for workers' compensation benefits. At that time, the doctrine of sovereign immunity immunized public bodies from many forms of liability. The Legislature extended workers' compensation coverage to "[e]very employee who shall be in the employ of the State, county, municipality or any board of commission, or any other governing body . . . ." *L.*1913, *c.* 145. Obviously, the Legislature

---

[1] By an amendment dated January 5, 1996, the Legislature repealed the underlined provisions of the above law. We shall discuss the effect of that repeal in part IV.

did not then contemplate whether PA employees would be covered by the Act. The PA did not exist.

*1921*—The Port Authority was created by compact between New York and New Jersey. *L.*1921, *c.* 151. As a bi-state agency, however, its employees were not covered by the workers' compensation laws of either state.[2]

*1931*—Language was added to Section 43 to prevent State employees from receiving disability pension benefits and later receiving workers' compensation benefits for the same injury. The text of that 1931 amendment read:

> The provisions of this act shall not apply to ... any former employee who has been injured or disabled in line of duty and has been retired on pension by reason of such injury or disability. Nothing herein contained shall be construed as affecting or changing in any way ... any provision of any retirement or pension fund now or hereafter provided by law.
>
> [*L.*1931, *c.* 355.]

No intent may be ascribed to the 1931 Legislature because the PA's employees were not yet covered by workers' compensation.

*1951*—New York and New Jersey agreed to waive the PA's sovereign immunity and consented to suits, including workers' compensation suits, against the PA. *L.*1951, *c.* 204, now codified at *N.J.S.A.* 32:1–157.

*1951 to 1971*—A number of amendments to the retirement provisions created, over the years, a dilemma for the State's public employees. A worker could retire immediately but could collect no workers' compensation benefits. In the alternative, a worker could collect workers' compensation benefits immediately but would be prevented from collecting disability benefits until the completion of the compensation award. *Conklin v. City of East Orange,* 73 *N.J.* 198, 203, 373 *A.*2d 996 (1977). The employee could not know in advance which award would be greater but would be limited to the option chosen initially. *Ibid.*

---

[2] Between 1913 and 1931, most State employees were allowed to receive both workers' compensation benefits and disability pension benefits in full. *In re Smith,* 57 *N.J.* 368, 373, 273 *A.*2d 24 (1971).

*1971*—The Legislature amended various State retirement programs, the general effect of which was to allow State employees to receive both workers' compensation and disability retirement benefits with workers' compensation being offset against the retirement benefits. *See, e.g., L.*1971, *c.* 213. Thus, over the course of time the employee would receive the maximum possible award while still protecting the State's treasury against paying both awards in full.

The issues posed for decision against this background are: (1) whether the Legislature intends that the provisions of Section 43 that bar state employees from simultaneously obtaining accidental disability pension benefits and workers' compensation benefits apply to employees of the Port Authority, and (2) would the application of that state law to the· bi-state agency impermissibly infringe on the independence of the bi-state agency.

### III

The principles of decision are familiar, involving statutory construction and an understanding of the law dealing with bi-state agencies. We deal with the latter issue first.

■ The Port Authority is not the agency of a single state but rather a public corporate instrumentality of New Jersey and New York. It follows that neither creator state may unilaterally impose additional duties, powers, or responsibility upon the Authority. *Nardi v. Delaware River Port Auth.,* 88 *Pa.Commw.* 558, 490 *A.*2d 949, 950 (1985) (citing *C.T. Hellmuth & Associates, Inc. v. Washington Metro. Area Transit Auth.,* 414 *F.Supp.* 408 (D.Md.1976)). The corollary of the proposition that neither state may unilaterally impose its legislative will on the bi-state agency is that the agency may be subject to complementary or parallel state legislation. *Cf. Delaware River Joint Toll Bridge Comm'n v. Colburn,* 310 *U.S.* 419, 60 *S.Ct.* 1039, 84 *L.Ed.* 1287 (1940) (where compact prescribed procedure for land acquisition in each state, no unilateral departure could be made by agency). The illustration of parallelism that we gave in *Eastern Paralyzed Veterans Ass'n v. City of*

*Camden,* 111 *N.J.* 389, 545 *A.*2d 127 (1988) (deciding whether complementary provisions for providing handicapped access existed in both states), was that employees of the Delaware River Port Authority must observe stop lights in New Jersey because Pennsylvania and New Jersey have similar legislation in this regard. *See Nardi, supra,* 490 *A.*2d at 951–52 (stating that if disability pay enactments of New Jersey and Pennsylvania were substantially similar, court could find agreement by states concerning extent of disability pay).

Applying these principles of parallelism to this case requires us to consider briefly provisions of New York law. As noted, New York could not compel the Port Authority to provide a pension for its employees. Indeed, it probably could not compel the Port Authority to provide workers' compensation benefits. The Port Authority, however, has agreed to provide these benefits and it has permitted its employees, to some extent, to pick and choose among those benefits. The question in this case is whether the provisions in each state for picking and choosing the benefits are parallel and complementary. *Ibid.*

■ We do not profess to decide the exact contours of New York law with respect to the simultaneous receipt of disability-pension and workers' compensation benefits. There is evidence in the record, however, that the provisions are somewhat similar. New York State pension law specifically reduces accidental disability pension installments by the amount of any concurrent New York workers' compensation award. *N.Y. Retire. & Soc. Sec. Law* § 364 (McKinney 1995). An accidental disability benefit is 75 per cent of final average salary. Bunk's ordinary disability pension of 33–⅓ per cent of final average salary is not, however, subject to a statutory setoff for workers' compensation benefits for the same disability.

However, these provisions of New York law, like New Jersey's, reflect a plan to coordinate disability benefits under public employee retirement and workers' compensation systems. The independent status of the PA does not prevent the application of

parallel provisions of law. Although a New Jersey employee might have the advantage of being able to elect the greater of the benefits (retirement vs. workers' compensation), we have been informed that Bunk may seek workers' compensation benefits under New York law. That opportunity for the exercise of parallel (if not identical) regulation suggests that each state's laws may appropriately be invoked.

Because New Jersey law may apply to the issue, the next question is does it apply? We believe that petitioner's reliance on *Hess* to affect the meaning of Section 43 is misplaced. In that case, the Supreme Court, observing that the Port Authority was conceived as a financially independent body with funds derived primarily from private investors and that its obligations are not liabilities of the two founding states, held that the Port Authority should not be deemed to enjoy Eleventh Amendment immunity because its operations do not expose either of the compact states to financial liability. *Hess, supra,* —— *U.S.* at ——, 115 *S.Ct.* at 406, 130 *L.Ed.*2d at 263. Whether the Port Authority enjoys Eleventh Amendment immunity, however, is different from the question of whether the Port Authority exercises governmental functions as an agency of the State of New Jersey and whether the PA employees are covered by Section 43.

A public body may be considered an agency of the State for some purposes but not for others. For example, Rutgers University is not an arm of the State entitled to Eleventh Amendment immunity. *Kovats v. Rutgers, The State Univ.,* 822 *F.*2d 1303, 1312 (3d Cir.1987). Yet Rutgers has been recognized to be a State agency for purposes of immunity from local land use regulations, *Rutgers v. Piluso,* 60 *N.J.* 142, 158, 286 *A.*2d 697 (1972), and immunity from local property taxation. *Rutgers v. Piscataway Township,* 1 *N.J.Tax* 164, 171 (1980).

As noted above, the Port Authority is also not an arm of the State entitled to Eleventh Amendment immunity. Yet the Port Authority has been recognized as "a state agency performing

functions on behalf of the state." *Port Auth. Police Benevolent Ass'n v. Port Auth. of New York & New Jersey,* 819 *F*.2d 413, 415 (3d Cir.), *cert. denied,* 484 *U.S.* 953, 108 *S.Ct.* 344, 98 *L.Ed.*2d 370 (1987). The Port Authority has the power of eminent domain, *N.J.S.A.* 32:1–35.22, the income from its bonds and other obligations is exempt from state and local taxation, *N.J.S.A.* 32:1–33, and its property is exempt from state and local taxation. *See Port of New York Auth. v. City of Newark,* 20 *N.J.* 386, 120 *A*.2d 18 (1956). The Port Authority, like Rutgers, may thus be viewed as a "hybrid institution," *Trustees of Rutgers College v. Richman,* 41 *N.J.Super.* 259, 289, 125 *A*.2d 10 (Ch.Div.1956)—at one and the same time an agency of the State and not an agency of the State.

In *Brown v. Port Authority Police Superior Officers Association,* 283 *N.J.Super.* 122, 130–31, 661 *A*.2d 312 (App.Div.1995), decided after *Hess,* the court focused on "the control that the governors and legislatures of [New York and New Jersey] exercise over the Port Authority's operations and the extensive governmental responsibilities it performs" to conclude that the Authority, as "an administrative arm of the governments" of the compact states, was a "political subdivision" of the State and thus exempt from the provisions of the National Labor Relations Act, 29 *U.S.C.* § 141 to § 187. The court noted that its conclusion was supported by various decisions of the lower federal courts that have held that governmental agencies similar to the Port Authority are political subdivisions. 283 *N.J.Super.* at 131, 661 *A*.2d 312 (citations omitted).

In *Wright v. Port Authority of New York and New Jersey, supra,* 263 *N.J.Super.* at 15–16, 621 *A*.2d 941, the court had concluded that the Port Authority was an agency of the States of New York and New Jersey and that the Port Authority was included in the "other governing body" language of Section 43. This would make employees of the Port Authority subject, as are other State employees, to the Section 43 bar to simultaneous recovery of disability retirement benefits and workers' compensation benefits. There is, however, this difference. In *Wright* the

worker was receiving an accidental disability pension benefit of 75 per cent of final compensation, whereas in this case Bunk is receiving an ordinary disability pension of approximately 33⅓ per cent of final compensation.

■ It is a close question whether the *Wright* holding should apply in the case of an ordinary New York disability pension. As the Appellate Division pointed out in this case, there is no setoff from that pension under New York law for related workers' compensation benefits. 279 *N.J.Super.* at 623 n. 2, 653 *A.*2d 1170. We may presume, however, that New York's statutory scheme reflects the proper legislative balance for integrating workers' compensation benefits with related pension benefits. We have not the same assurance that the allowance of New York pension and New Jersey workers' compensation benefits would reflect the same balance.

Petitioner argues that the Legislature's only concern in Section 43 was to protect the State's pension programs (not, as here, the New York State pension program). He emphasizes that the Legislature made amendments to all State retirement programs in 1971 that allowed State employees to receive both workers' compensation and disability retirement benefits, with workers' compensation being offset against the benefits. *Conklin, supra,* 73 *N.J.* at 204, 373 *A.*2d 996. Thus, over the course of time the employee would receive the maximum possible award while still protecting the State Treasury against employees receiving both awards in full.

Given the intertwined histories of Section 43 and the State's disability pension plan, petitioner argues that the Legislature regarded State furnished workers' compensation and State disability pensions as interchangeable parts in the State employees' benefits system.

A fair conclusion to be drawn from *N.J.S.A.* 34:15–43 and the cases construing it is that the Legislature intended to prohibit recovery of work[ers'] compensation if the injured employee has already been retired on an accident disability pension under *N.J.S.A.* 43:16A–7.

[*In re Smith, supra,* 57 *N.J.* at 375, 273 *A.*2d 24.]

Thus, petitioner argues that this Court recognized in *Smith* that Section 43 was meant to apply *only* to those persons participating in New Jersey pension plans. *See also Conklin, supra,* 73 *N.J.* at 204, 373 *A.*2d 996 (holding that Section 43's ban on recovery of workers' compensation following receipt of disability pension benefits was so closely intertwined with the State pension system that the Legislature's modification of the pension system by implication also modified Section 43).

Because those cases concerned only the State pension system, they do not answer the question posed in this case. We think, however, that there is a corollary to the idea of integration of benefits, "the net effect [of which] is that the retired public employee is entitled to receive the *more advantageous* of the benefits payable under the respective statutory provisions," *ibid.* (emphasis added), and thus perhaps not *both* benefits.

Although petitioner's pension is a New York State pension, it need not have been so. (The PA elected to join the New York system for convenience.) A private pension could have provided a setoff. "[A]n underlying theme of the workers' compensation law is that there should not be duplicate payments for the same disability." *Young v. Western Electric Co.,* 96 *N.J.* 220, 231, 475 *A.*2d 544 (1984). Granted, there is no provision in the PA pension requiring or allowing setoff, the question to us is one of legislative intent.

One of the central themes of recent Legislatures is that there should not be double recovery from two sources for the same injury. *See N.J.S.A.* 59:9–2(e) (barring any recovery in tort for losses covered by collateral sources); *see also Frazier v. New Jersey Manufacturers Ins. Co.,* 142 *N.J.* 590, 667 *A.*2d 670 (1995) (holding that proceeds of an attorney malpractice claim represent substitute for recovery from third-party tortfeasor subject to workers' compensation lien). Concededly this benefit package did not exceed (as in *Wright*) the worker's final compensation. On

balance, however, we believe that policy to be the dominant policy here in interpreting Section 43.

Petitioner's final contention is that the Legislature could not have intended for Section 43 to apply to employees of the PA because the PA did not yet exist when the Legislature adopted Section 43 and because the Legislature has since included within the statute organizations such as the Palisades Interstate Park Commission while it has made no mention of the PA. That the Port Authority did not exist when Section 43 was enacted does not necessarily mean that the PA is not covered by the Section.

> [Events] that were unforeseen at the time of initial legislative action, have [often] required the reinterpretation and fresh application of relevant statutory law in order to avoid the inadvertent and unintended creation of a statutory anomaly or hiatus and to preserve for such legislation a sensible place in the contemporary scene.
>
> [*Renz v. Penn Central Corp.*, 87 *N.J.* 437, 458, 435 *A.2d* 540 (1981).]

And that the Legislature has since made specific reference only to the Palisades Interstate Park Commission (PIPC) in Section 43 is not expressive of an intention to exclude the Port Authority.[3] Canons of construction, such as *inclusio unius est exclusio alterius*, the inclusion of one is the exclusion of another, must yield to the paramount canon—that of legislative intent.

> In cases such as this, where it is clear that the drafters of a statute did not consider or even contemplate a specific situation, this Court has adopted as an established rule of statutory construction the policy of interpreting the statute "consonant with the probable intent of the draftsman 'had he anticipated the situation at hand.'" *J.C. Chap. Prop. Owner's etc. Assoc. v. City Council*, 55 *N.J.* 86, 101, 259 *A.2d* 698 (1969) (quoting *Dvorkin v. Dover Tp.*, 29 *N.J.* 303, 315, 148 *A.2d* 793 (1959)); *Safeway Trails, Inc. v. Furman*, 41 *N.J.* 467, 197 *A.2d*.366, appeal dismissed and *cert.* den., 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.2d* 84 (1964). Such an interpretation will not "turn on literalisms, technisms or the so-called rules of interpretation; [rather] it will justly turn on the breadth of the objectives of the legislation and the

---

[3] As noted in *Wright, supra,* 263 *N.J.Super.* at 20, 621 *A.2d* 941, the Legislature apparently referred to the PIPC in the Act to "deal with the treatment of volunteers and individuals who are under the general supervision of the Park Commission only, not the more generic question of dual recovery by bi-state agency employees."

commonsense of the situation." *J.C. Chap. Prop. Owner's*, 55 *N.J.* at 100, 259 *A.*2d 698.

[*AMN, Inc. v. South Brunswick Township Rent Leveling Bd.*, 93 *N.J.* 518, 525, 461 *A.*2d 1138 (1983).]

The point has been made that our Legislature would not be concerned about the fiscal well-being of the Port Authority. As the Appellate Division noted below, the Port Authority has elected to join the New York pension system and "New Jersey bears absolutely no financial or administrative responsibility [for the Port Authority] at all." *Bunk, supra,* 279 *N.J.Super.* at 619, 653 *A.*2d 1170. But the Port Authority is a vital partner in the economic well-being of New Jersey. The Newark International Airport, the Port Authority Trans–Hudson Corporation (PATH), and the Journal Square Transportation Center are signs of that commitment in New Jersey. New Jersey citizens undoubtedly pay a significant share of the bridge and tunnel tolls that sustain the Authority. New Jersey legislators are hard pressed to avoid the controversy when those tolls are raised. The governors of each state have veto power over the minutes of the agency. *N.J.S.A.* 32:2–6. Elected officials in both states often seek oversight of the fiscal practices of the Port Authority. *See* Neil MacFarguhar, *City is to Study Port Unit,* N.Y. Times, Jan. 24, 1996, at B5 (Mayor of New York City seeks review of Port Authority expenditures).

Given the mutual concerns of the two founder states, we are satisfied that our Legislature would intend that the workers' compensation benefits afforded to PA employees under New Jersey law should, at a minimum, be integrated with the disability retirement benefits afforded to the public employee for the same injury. We would hesitate to hold the Section 43 bar applicable were it not possible for petitioner to resume the processing of his workers' compensation claim in New York. Workers' compensation laws are to be liberally construed. *Panzino v. Continental Can Co.,* 71 *N.J.* 298, 303, 364 *A.*2d 1043 (1976). However, the dominant theme that appears from our legislation and case law is that the injured worker should be able to receive "the more

advantageous of the benefits payable under the respective statutory provisions." *Conklin, supra,* 73 *N.J.* at 204, 373 *A.2d* 996. In this case we believe that the Legislature would intend that the statutory provisions be integrated. The only way to integrate the provisions in this case is to apply Section 43.

## IV

Whatever doubt that we may have had about the proper integration of the two forms of benefits has been further clarified by the recent amendment to Section 43. As noted, section five of *Law* 1995, *chapter* 369 replaces the flat ban on recovery of workers' compensation benefits by a retiree on a disability pension with what amounts to a dollar-for-dollar setoff from the retirement allowance.[4] These amendments appear to be a recognition of the gradual developments in case law that permitted employees to select the more advantageous of the benefits. We asked the parties to furnish us with supplemental briefs concerning the effect of the changes.

The Port Authority argues that the recent amendments to *N.J.S.A.* 34:15–43 merely clarify existing case law and were not

---

[4] For example, the Public Employees' Retirement System provision has been modified in a manner typical of the pension systems in question:

An application for retirement benefits may be approved by the board of trustees while the member, applying for such benefits, is in receipt of periodic benefits under the [Workmen's] *Workers'* Compensation Law. [In this event the actuarial equivalent of such periodic benefits remaining to be paid shall be computed and will serve to reduce] *If a retirant receiving an accidental disability retirement allowance becomes a recipient of periodic benefits under the workers' compensation law after the date of retirement,* the pension portion of the retirement allowance payable to the retirant *shall be reduced, during the period of the payment of the periodic benefits, dollar-for-dollar in the amount of the periodic benefits received after the date of retirement,* subject to the provisions of section 64 of [chapter 84 of the laws of 1954] *P.L.1954, c. 84 (C.43:15A–64). The reduction provided for herein shall not affect the retirant's pension adjustment benefits or survivor benefits that may be payable upon the death of the retirant.*

[*L.*1995, *c.* 369, § 2.]

intended to rescind the longstanding equitable bar against double recovery. It relies on the Assembly Appropriations Committee Statement to A–1977:

> *For consistency with court decisions* and the pension systems' offset provisions, the amendments delete from the workers' compensation law a sentence which prohibits altogether the receipt of workers' compensation benefits by a retirant receiving a disability retirement allowance.

[Assembly Appropriations Committee, Statement to A–1977 (December 8, 1994).]

We agree that the recent amendments reaffirm the Legislature's intention to integrate workers' compensation and retirement-disability benefits. Because New Jersey cannot effectively control the New York retirement allowances granted to Port Authority employees, the practical method of integration of benefits is to reduce dollar-for-dollar the New Jersey workers' compensation awards for PA employees by the amount of the New York disability retirement allowance for the same injury. As a condition of the obligation of the PA to make workers' compensation payments, the worker shall procure a certified statement from the New York pension authorities setting forth the disability retirement benefits paid to the worker.

The final question is whether this recent amendment should apply to Bunk's case. We have adopted a straightforward test to determine whether legislation should be given prospective or retroactive effect. In *Twiss v. State, Department of Treasury*, 124 *N.J.* 461, 467, 591 *A.*2d 913 (1991), we applied a two-part test to determine whether a statute could be applied retroactively. First we asked whether the Legislature intended to give the statute retroactive application. *Ibid.* (citing *Gibbons v. Gibbons*, 86 *N.J.* 515, 522, 432 *A.*2d 80 (1981)). If the Legislature intended retroactive application, the second question is whether retroactive application of the statute results in an unconstitutional interference with vested rights or a manifest injustice. *Ibid.* (citing *State, Dep't of Envtl. Protection v. Ventron Corp.*, 94 *N.J.* 473, 498–99, 468 *A.*2d 150 (1983)).

■ Traditionally, when searching for probable legislative intent, we have looked to the statute's plain language. If the language is plain and clearly reveals the statute's meaning, the court's sole function is to enforce the statute in accordance with the language. In *Phillips v. Curiale*, 128 *N.J.* 608, 611, 608 *A.*2d 895 (1992), we considered a statute that specifically stated that it applied to "all actions and proceedings that accrue, are pending or are filed after June 1, 1986." In this case, the legislation simply stated that it would take effect immediately. *L.*1995, *c.* 369. We have no clear indication of whether it was intended to apply to claims that were pending on the date of its enactment.

In *Dewey v. R.J. Reynolds Tobacco Co.*, 121 *N.J.* 69, 577 *A.*2d 1239 (1990), we noted that "a statute that changes the settled law and relates to substantive rights is prospective only, unless there is an unequivocal expression of contrary legislative intent." *Id.* at 95, 577 *A.*2d 1239 (quoting *Pennsylvania Greyhound Lines v. Rosenthal*, 14 *N.J.* 372, 381, 102 *A.*2d 587 (1954)). As noted, the Port Authority interprets the amendments primarily to be a clarification of existing law, not a change in settled law.

■ On balance, we believe that the Legislature intends the 1996 amendment to apply to claims pending at the time of the law's enactment. Rather than require petitioner to initiate new proceedings in New York to recover workers' compensation benefits to which he is entitled, the simpler solution is to continue the pending proceedings. Petitioner has undoubtedly retained expert witnesses in New Jersey and the matter can be quite readily resolved. Petitioner has the obligation to obtain the certified statement of benefits under New York law as a condition of any obligation for payment of workers' compensation benefits under New Jersey law. Those disability-retirement benefits shall be deducted from the workers' compensation award.

The judgment of the Appellate Division is reversed. The matter is remanded to the Division of Workers' Compensation for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.